### DEANER v UTICA COMMUNITY SCHOOL DISTRICT

Docket No. 78-5488. Submitted March 4, 1980, at Detroit.—Decided July 24, 1980. Leave to appeal applied for.

Chester C. Deaner, Jr., was injured while participating in a high school wrestling class. He and his father, Chester C. Deaner, brought an action for damages against the Utica Community School District, Eric B. Johnston, D.O., the doctor who had examined Chester Deaner, Jr., and approved his physical condition for wrestling, Robert Dilday, the class instructer, Joseph Schloff, a student instructer, and Jeffrey Facsko, a fellow student with whom Deaner was wrestling when the injury occurred. The Macomb Circuit Court, Edward J. Gallagher, J., granted summary judgment in favor of defendant Johnston on the ground that there was no genuine issue of material fact that plaintiffs had failed to plead a malpractice claim and in favor of the school district on the basis of governmental immunity from tort liability. Plaintiffs appeal. *Held:*

1. Examination of the affidavits and depositions reveals that an issue of fact does exist as to the course followed by Dr. Johnston in examining Chester Deaner, Jr. Summary judgment in favor of Dr. Johnston was, therefore, not proper.

2. Summary judgment in favor of the school district, based upon governmental immunity, was proper.

Affirmed in part, reversed in part.

1. MOTIONS — JUDGMENT — SUMMARY JUDGMENT — AFFIDAVITS — COURT RULES.

A motion for summary judgment made on the grounds that there is no genuine issue as to material facts is to be supported by affidavit; where the affidavit or other proof is legally insufficient the nonmoving party need not produce evidence to demonstrate that there is a material issue of fact (GCR 117.2[3]).

REFERENCES FOR POINTS IN HEADNOTES

[1] 73 Am Jur 2d, Summary Judgment §§ 18, 22, 25.

[2] 57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 11, 38-41.

Modern status of doctrine of sovereign immunity as applied to public schools and institutions of higher learning. 33 ALR3d 703.

2. Schools — Torts — Governmental Immunity — Statutes.
    The operation of a public school is a governmental function,
    thereby providing a school district with governmental immu-
    nity from tort liability (MCL 691.1407; MSA 3.996[107]).

*Lakin, Worsham & Victor, P.C.* (by *Phil Bozzo*),
for plaintiffs.

*Seavitt, Westcott, Miller, Stowe & Magnuson* (by
*Barbara L. Quenneville*), for defendant Utica Com-
munity School District.

*Sullivan, Ranger, Ward & Bone,* for defendant
Eric B. Johnston, D.O.

Before: D. E. Holbrook, Jr., P.J., and R. M.
Maher and Cynar, JJ.

Per Curiam. Plaintiff Chester C. Deaner, Jr. was
enrolled in a combative sports physical education
course at Eisenhower High School in the Utica
Community School District. The course included
wrestling. Defendant Johnston examined plaintiff
on September 9, 1972, and approved his physical
condition for wrestling. On February 16, 1973,
while wrestling in class with fellow student Jeffrey
Facsko, plaintiff suffered a subluxation of two
vertebrae which resulted in quadriplegia.

The trial court granted summary judgment for
defendant Johnston, pursuant to GCR 1963,
117.2(3), on the ground that there was no genuine
issue as to any material fact and that Johnston
was therefore entitled to judgment as a matter of
law. The trial court granted summary judgment
for defendant Utica Community School District,
pursuant to GCR 1963, 117.2(1), on the ground
that the school district was immune from tort
liability under MCL 691.1407; MSA 3.996(107).
Plaintiffs appeal from those orders.

GCR 1963, 117.3 requires that a motion based on GCR 1963, 117.2(3) be supported by affidavits. In *Brooks v Reed,* 93 Mich App 166, 174; 286 NW2d 81 (1979), this Court discussed the supporting affidavit requirement. There, as here, defendant was the moving party.

"In a summary judgment proceeding, an affidavit is employed as a voluntary statement made *ex parte.* 3 Am Jur 2d, Affidavits, § 1, p 380. The function of an affidavit by the defendant is to establish affirmatively that there is no basis in fact to support plaintiff's claim. To that end, the defendant must come forward with some evidentiary proof—some statement of specific fact. *Durant v Stahlin,* [375 Mich 628; 135 NW2d 392 (1965)], *Doornbos v Nordman,* 26 Mich App 278, 281; 182 NW2d 362 (1970)."

In other cases, it has been held that the nonmoving party need not meet a legally insufficient affidavit. See for example *McCoy v DeLiefde,* 376 Mich 198, 208; 135 NW2d 916 (1965), *Hollerud v Malamis,* 20 Mich App 748, 762; 174 NW2d 626 (1969), and *Jones v Shek,* 48 Mich App 530, 533; 210 NW2d 808 (1973). The nonmoving party therefore need not produce evidence to demonstrate that there is a material issue of fact as to a point on which a moving party has not produced an affidavit or other evidence.

Here neither side's affidavits, depositions, or evidence touched on the relevant standard of care or on a causal link between defendant Johnston's conduct and the injury. Comparison of defendant Johnston's affidavit with the deposition of Chester C. Deaner, Jr., shows the existence of an issue of fact as to the course defendant Johnston followed in examining Deaner. However, the failure of Johnston to find such a defect or disease is completely consistent with the theory that he was

negligent in failing to find one. That Deaner stated in his deposition that he had not known of such a defect did not necessarily mean that no such defect existed, or that Johnston was not negligent in failing to find it. The trial court's grant of summary judgment for defendant Johnston therefore must be reversed.

In *Bush v Oscoda Area Schools,* 405 Mich 716, 727-728; 275 NW2d 268 (1979), Justice LEVIN, writing for the Court, stated:

"Three Justices have indicated in other opinions[6] that a school district is subject to liability for negligence in the operation of a school and would therefore find it unnecessary to decide whether the complaint states a claim within the defective building provision. Because there is no majority to so hold, we must determine whether the complaint states a claim within the defective building provision.

---

[6] I would hold on equal protection grounds that a school district is subject to the same liability as a private school. See *Thomas v Dep't of State Highways,* 398 Mich 1, 14; 247 NW2d 530 (1976). Justice KAVANAGH and Justice FITZGERALD have said in an opinion which I signed that the operation of a school is not a governmental function. *Thomas v Dep't of State Highways, supra,* pp 21-22. See, also, *Pichette v Manistique Public Schools,* 403 Mich 268; 269 NW2d 143 (1978)."

---

This statement is useful as a guide for interpreting *Parker v Highland Park,* 404 Mich 183; 273 NW2d 413 (1978), and *Perry v Kalamazoo State Hospital,* 404 Mich 205; 273 NW2d 421 (1978), in the context of the present case. In *Parker,* Justices FITZGERALD, KAVANAGH, and LEVIN limited the term "governmental function" to those activities of essence to governing. They determined that the operation of a general hospital was not of essence to governing because it was not an activity of such peculiar nature that it could only be done by government. These are the Justices that *Bush*

indicates would hold the operation of a school is not a governmental function.

Justice MOODY agreed that only those activities of essence to governing were governmental functions. However, his view of what activities were of essence to governing was more expansive than that of Justices FITZGERALD, KAVANAGH, and LEVIN. In *Parker,* at 200, he said:

"[A]s a basic guideline, the crux of the governmental essence test should be founded upon the inquiry whether the purpose, planning and carrying out of the activity, due to its unique character or governmental mandate, can be effectively accomplished only by the government. Unless liability would be an unacceptable interference with government's ability to govern, activities that fall outside this perimeter, although performed by a government agency, are not governmental functions and therefore not immune."

Justice MOODY applied this standard to determine in *Parker* that the operation of the general hospital was not of essence to governing and in *Perry* that the operation of a mental hospital was of essence to governing. His reasoning was succinctly explained in *Cronin v Hazel Park,* 88 Mich App 488, 490-491; 276 NW2d 922 (1979):

"In determining that the operation of a general hospital is nongovernmental, Justice MOODY found five factors to be relevant. First, the number of private general hospitals is far greater than the number of governmental hospitals in this state. Second, the fiscal involvement of the state in the operation of such hospitals is significantly displaced by private payment. Third, government has little direct responsibility for placing patients in public general hospitals. Fourth, the day-to-day care afforded to the substantial majority of patients in general hospitals is not of a uniquely governmental character or precipitated by governmental mandate.

Fifth, holding cities liable for negligent operation of general hospitals would not be an unacceptable interference with their ability to govern. The operation of a state mental hospital he distinguished on the grounds that government plays a pervasive role in the area of mental health, appropriating substantial state funds to that field and declaring as a public policy the care and treatment of mentally disabled persons. Also, he reasoned that the number of private mental hospitals available to the judiciary to deal with the institutional needs of the public is inadequate. Finally he found that the day-to-day day care by an attendant, physician, or other employee on the staff of a mental hospital represents a uniquely governmental function. Justice Moody noted that the line of demarcation between general hospitals and mental hospitals was imperfect but just, within the confines of the present statute."

Operation of a public school presents factors similar to those relied on by Justice Moody to distinguish mental hospitals from general hospitals. The government plays a pervasive role in the area of education, appropriating substantial state funds to that field and declaring education as a public policy. See Const 1963, art 8, §§ 1 & 2. The number of private schools is inadequate to meet the educational needs of the public. Finally, while private schools exist to educate some students, the provision of a free and universal education is a uniquely governmental function. Therefore, we would find that the trial court was correct in granting summary judgment to the school district based on governmental immunity.

Plaintiffs also argue that they stated a claim under the "public buildings" exception to governmental immunity, MCL 691.1406; MSA 3.996(106). However, while some of the language in plaintiffs' complaint might, if broadly construed, fall within this exception, plaintiffs' answer to defendant

school district's motion for summary judgment admitted that plaintiffs' complaint was not within the scope of the public buildings exception.

Finally, plaintiffs urge us to hold the governmental immunity statute unconstitutional. Until such time as the Supreme Court reverses prior law and finds the statute unconstitutional we are bound by precedent. See *Rohrabaugh v Huron-Clinton Metropolitan Authority Corp,* 75 Mich App 677; 256 NW2d 240 (1977).

Affirmed in part and reversed in part.