CHURILLA v SCHOOL DISTRICT FOR THE CITY OF EAST
DETROIT

Docket No. 45419. Submitted January 13, 1981, at Detroit.—Decided
April 7, 1981. Leave to appeal applied for.

John Churilla, in his own right and as next friend of John
Lawrence Churilla, brought an action against the School Dis-
trict for the City of East Detroit, Riddell Incorporated, Griswold
Sporting Goods Company, and Al Bernardi for injuries received
by John Lawrence Churilla while participating in defendant
school district's intermural football program. Defendant school
district moved for summary judgment on the ground of govern-
mental immunity, which motion was granted, Wayne Circuit
Court, Maureen Pulte Reilly, J. Plaintiff appeals, alleging that
the administration and supervision of the football program is
not a governmental function and that the trial court erred in
granting defendant school district's motion. *Held:*

The operation of an athletic program, including the adminis-
tration and supervision of intermural football, by a public
school is a governmental function. The trial court properly
granted defendant school district's motion.

Affirmed.

BRONSON, J., dissented. He would hold that extracurricular
football programs are not of such a uniquely governmental
character or precipitated by governmental mandate as to afford
a school district immunity from tort liability for injuries aris-
ing under such a program. He would reverse.

OPINION OF THE COURT

1. SCHOOLS — ATHLETIC PROGRAMS — TORTS — GOVERNMENTAL IMMU-
NITY.

The operation of an athletic program including administration

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 39-
41.

Tort liability of public schools and institutions of higher learning
for accidents occuring during school athletic events. 35 ALR3d
725.

Modern status of doctrine of sovereign immunity as applied to
public schools and institutions of higher learning. 33 ALR3d 703.

and supervision of intermural football by a public school district is a governmental function, and a school district is immune from tort liability arising from injuries incurred under such a program.

DISSENT BY BRONSON, J.

2. SCHOOLS — EXTRACURICULAR FOOTBALL PROGRAMS — TORTS — GOVERNMENTAL IMMUNITY.

Extracurricular football programs are not of such a uniquely governmental character or precipitated by governmental mandate as to afford a school district immunity from tort liability for injuries arising under such a program.

*Portner & Stine, P.C.,* and *Sommers, Schwartz, Silver & Schwartz, P.C.,* for plaintiff.

*Buchanan, Ogne & Jinks, P.C.* (by *Michael J. Hutchinson,* of counsel), for defendant.

Before: V. J. BRENNAN, P.J., and BRONSON and BASHARA, JJ.

BASHARA, J. This appeal involves the sole issue of whether the day-to-day operation of a public school, including the administration and supervision of a football program, is a governmental function and, therefore, entitled to immunity. We hold that a public school in the operation of its athletic program is entitled to immunity, and so affirm the order of the trial judge granting the school district's motion for summary judgment.

John Lawrence Churilla was a student at Oakwood Junior High School within the defendant school district. He was participating in a practice session of the school's football program when he allegedly made contact with an oncoming team member, sustaining injury.

Our Supreme Court appears to have determined that the operation of a public school is a govern-

mental function. In *Bush v Oscoda Area Schools,*
405 Mich 716; 275 NW2d 268 (1979), Justice Levin
reiterated the position of Justices Kavanagh,
Fitzgerald, and himself that the day-to-day opera-
tion of a school is not a governmental function.
See *Galli v Kirkeby,* 398 Mich 527, 531; 248 NW2d
149 (1976). He conceded that his position did not
command the concurrence of a majority of the
Court. *Bush,* 727-728.

In *Bush,* the remaining four justices agreed with
Justice Levin's assessment that the "Kavanagh—
Levin—Fitzgerald view" did not claim a majority
of the Court.

The case of *Deaner v Utica Community School
Dist,* 99 Mich App 103; 297 NW2d 625 (1980),
presents facts similar to the case at bar. The
minor in that matter was enrolled in a combative
sports course and suffered severe injuries while
engaged in a wrestling match in class.

The *Deaner* Court analyzed Justice Moody's
position on governmental immunity in *Parker v
Highland Park,* 404 Mich 183; 273 NW2d 413
(1978), and *Perry v Kalamazoo State Hospital,* 404
Mich 205; 273 NW2d 421 (1978), and applied it as
follows:

"Operation of a public school presents factors similar
to those relied on by Justice Moody to distinguish
mental hospitals from general hospitals. The govern-
ment plays a pervasive role in the area of education,
appropriating substantial state funds to that field and
declaring education as a public policy. See Const 1963,
art 8, §§ 1 & 2. The number of private schools is
inadequate to meet the educational needs of the public.
Finally, while private schools exist to educate some
students, the provision of a free and universal educa-
tion is a uniquely governmental function. Therefore, we
would find that the trial court was correct in granting

summary judgment to the school district based on governmental immunity." 99 Mich App 108.

See, also, *Smith v Mimnaugh,* 105 Mich App 209; 306 NW2d 454 (1981).

In *Lovitt v Concord School Dist,* 58 Mich App 593; 228 NW2d 479 (1975), plaintiff's decedent died of heat prostration during a particularly severe football practice session. Concluding that a school district is immune from tort liability under such circumstances, the Court cited *McDonnell v Brozo,* 285 Mich 38; 280 NW 100 (1938), and *Cody v Southfield-Lathrup School Dist,* 25 Mich App 33; 181 NW2d 81 (1970), for the proposition that physical education activities have been held to constitute a governmental and not a proprietary function.

The *Lovitt* Court quoted with approval from Justice DETHMER's opinion in *Watson v Bay City School Dist,* 324 Mich 1, 11; 36 NW2d 195 (1949):

"Here the football game was part of the school's physical education program. The function is inherently educational, a governmental function without doubt."

Finally, in *Richards v Birmingham School Dist,* 348 Mich 490, 509-510; 83 NW2d 643 (1957), the Court stated:

"The football game played on November 25, 1948, must be considered as a part of the athletic activities of the school rather than as an independent contest. * * * Rather, the entire department is operated as a part of the school facilities and in furtherance of the objectives to be attained in educational lines. It may not be said that defendant district, in allowing athletic competition with other schools, is thereby engaging in a function proprietary in nature. On the contrary, it is performing a governmental function vested in it by law."

Affirmed.

V. J. Brennan, P.J., concurred.

Bronson, J. *(dissenting)*. I respectfully dissent. Fundamentally, I disagree with the majority's expansive interpretation of *Bush v Oscoda Area Schools,* 405 Mich 716; 275 NW2d 268 (1979). I agree that the *Bush* triumvirate of Justices Levin, Kavanagh, and Fitzgerald did not command a majority with their view that the operation of a public school system is not a governmental function. However, I do not believe that the remaining four justices should be classed together as holding that every function carried out by a school system is entitled to the cloak of governmental immunity. The majority impliedly recognizes this fact by quoting from *Deaner v Utica School Dist,* 99 Mich App 103; 297 NW2d 625 (1980), that portion of the opinion analyzing Justice Moody's position on governmental immunity as expressed in *Parker v Highland Park,* 404 Mich 183; 273 NW2d 413 (1978), and *Perry v Kalamazoo State Hospital,* 404 Mich 205; 273 NW2d 421 (1978). In *Parker,* Justice Moody wrote:

"To delineate a complete and balanced definition of governmental function within a simplistic format would be presumptuous. However, as a basic guideline, the crux of the governmental essence test should be founded upon the inquiry whether the purpose, planning and carrying out of the activity, due to its unique character or governmental mandate, can be effectively accomplished only by the government. Unless liability would be an unacceptable interference with government's ability to govern, activities that fall outside this perimeter, although performed by a government agency, are not governmental functions and therefore not immune." 404 Mich 183, 200.

The question we are presented with in this case is whether an extracurricular football program is of the essence of government as defined above by Justice MOODY. In my opinion, Justice MOODY's view of a governmental function makes immunity from liability the exception, rather than the rule. Justice MOODY's and the *Bush* triumvirate's views on governmental immunity are not wholly inconsistent theories and, on the facts of this case, in combination they should result in a holding of no immunity for the school district.

I believe that an extracurricular football program is simply not of a uniquely governmental character or precipitated by governmental mandate. While MCL 380.1502; MSA 15.41502 mandates "health and physical education" in the public schools, it does not require the maintenance of extracurricular athletic activities. There is nothing uniquely governmental in the function of staging competitive athletic events. I also reject the idea that holding school districts liable for the negligent operation of a football program constitutes "an unacceptable interference with government's ability to govern".

Nor do I believe a football program like the one in question here can only be accomplished through the government. It is true that the majority of football programs for high-school-aged participants are run through schools, and that Justice MOODY considered the fact that private general hospitals exceeded governmental ones significant in holding that governmentally run general hospitals were not entitled to immunity. However, this factor is not dispositive and does not even clearly cut against the no-immunity view in this case. First, a number of extracurricular football programs are associated with private schools. Other football pro-

grams exist through private organizations and churches. Thus, there is an analogy to a similar function in the private sector. Second, if this factor were dispositive, I believe the result could be an anomalous situation in which school football programs would be entitled to immunity, but school baseball programs—because of the greater number of private leagues—would not be exempt.

As I interpret Justice MOODY's theory of governmental immunity, it is not even dispositive if a particular function is almost solely carried on by government. The important question is can the function be "effectively accomplished only by government". I reject the idea that only government can effectively run a football program for high school students. Relying too heavily on a mere comparison of private and public activity in a given field ignores the fact that in certain areas the private-public dichotomy presents the proverbial chicken and egg problem. Could the function only be effectively advanced by government so that government filled a void, or did the government's movement into the field result in private organizations leaving or staying out of the same? Is the activity really the essence of government, or has the function come to be "governmental" only because government's role in the same has discouraged private organizations from being more active in the area? Sometimes a function not originally conceived of as uniquely governmental may over time correctly acquire this label. For instance, in the early days of this nation, firefighting in urban areas was almost exlusively conducted by private companies, while those in more agrarian settings relied on themselves and neighbors to fight fires. Today, however, I have little doubt but that firefighting would be considered a governmental func-

tion. Nonetheless, I have no difficulty in saying that the football program here is not a function which has shifted through the years from a private activity to an essentially governmental activity.

*Deaner, supra,* relied on by the majority, does not present the same issue we are confronted with here. *Deaner* involved an accident which occurred during the course of a regular physical education class. As noted above, physical education is mandated by state statute. While I express no opinion on whether *Deaner* was correctly decided, I do not believe it provides much support for the majority's view in this case. Similarly, *Lovitt v Concord School Dist,* 58 Mich App 593; 228 NW2d 479 (1975), cited by the majority, is of little precedential value. One of *Lovitt's* holdings was overruled by *Galli v Kirkeby,* 398 Mich 527; 248 NW2d 149 (1976), and the discussion of the governmental-immunity issue in that case was decided under the now discredited test of whether the activity was a governmental or proprietary function. For this same reason, I find that *Richards v Birmingham School Dist,* 348 Mich 490; 83 NW2d 643 (1957), lacks persuasive authority. A more detailed analysis of my views on the MOODY position on governmental-immunity problems can be found in *Ross v Consumers Power Co,* 93 Mich App 687, 690-697; 287 NW2d 319 (1979), *lv gtd* 408 Mich 959 (1980).

I would reverse.