GRAMES v KING

Docket Nos. 63548, 63575. Submitted December 15, 1982, at Detroit.—
Decided February 25, 1983. Leave to appeal applied for.

Tamara Grames was injured when she was assaulted in the
locker room of Pontiac Northern High School following a girls'
basketball game. Ms. Grames was a student at Walled Lake
High School and a member of the school's basketball team. She
was allegedly assaulted by certain Pontiac Northern students
following a game between Pontiac Northern and Walled Lake.
Ms. Grames and her parents brought an action against several
parties including the Walled Lake and Pontiac School Districts
and Boards of Education and various employees of each school
district in the Oakland Circuit Court. The defendants filed a
motion for summary judgment based on governmental immu-
nity. The trial court denied the motion, Gene Schnelz, J.,
finding that supervision of a locker room following an extracur-
ricular sports event was not of essence to governing. Separate
applications for leave to appeal filed by both school districts
and their respective employees were granted by this Court and
the matters were consolidated. *Held:*

1. The operation by a school district of extracurricular sports
programs is a governmental function which is protected by
governmental immunity.

2. Employees of an agency entitled to the protection of
governmental immunity are also entitled to governmental im-
munity protection when they are acting within the scope of
their employment.

Reversed and remanded with instructions.

REFERENCES FOR POINTS IN HEADNOTES

[1] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 150.

[2] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 30.

[3] 57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 39,
31.

68 Am Jur 2d, Schools § 322.

Modern status of sovereign immunity as applied to public schools
and institutions of higher learning. 33 ALR3d 703.

[4] 57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 85,
95.

1. Governmental Immunity — Public Building Exception.

The "public building" exception to governmental immunity does not apply where the allegation is that defendants failed to properly supervise an activity within a public building; the "public building" exception applies only to allegations of defective or dangerous conditions in the building itself (MCL 691.1406; MSA 3.996[106]).

2. Governmental Immunity — Governmental Function.

The focus must be on the precise activity giving rise to a plaintiff's claim, rather than on the overall or principal departmental operations, in determining whether a particular governmental activity is a governmental function for purposes of governmental immunity.

3. Schools — Governmental Immunity — Girls' Basketball.

The operation by a school district of extracurricular sports programs is a governmental function which is protected by governmental immunity.

4. Governmental Immunity — Governmental Employees.

Employees of an agency entitled to the protection of governmental immunity are also entitled to governmental immunity protection when they are acting within the scope of their employment.

*Lakin, Worsham & Victor, P.C.* (by *Larry A. Smith*), for plaintiff.

*Ogne, Jinks, Ecclestone & Alberts, P.C.* (by *Dennis D. Alberts* and *Stephen T. Moffett*), for defendants Pontiac School District, Pontiac School Board, and its employees.

*Berry, Puleo & Noeske* (by *William D. Kahn*), for defendants Walled Lake School District, Walled Lake School Board, and its employees.

Before: Danhof, C.J., and J. H. Gillis and H. E. Deming,* JJ.

Per Curiam. The defendant school districts,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

boards of education, and their respective employees appeal by leave granted from the trial court's order denying their motion for summary judgment and finding that defendants were not protected by governmental immunity under MCL 691.1407; MSA 3.996(107).

Plaintiff minor, Tamara Grames, was allegedly injured when she was assaulted in the locker room of Pontiac Northern High School following a girls' basketball game. Ms. Grames was a student at Walled Lake High School and a member of the school's basketball team. She was allegedly assaulted by certain Pontiac Northern students following a game between Pontiac Northern and Walled Lake.

Ms. Grames and her parents filed this action against several parties including the Walled Lake and Pontiac School Districts and boards of education (hereinafter the school districts) and various employees of each school district (hereinafter the employees). The above-mentioned defendants filed a motion for summary judgment based on governmental immunity. The trial court denied the motion, finding that supervision of a locker room following an extracurricular sports event was not of essence to governing within the meaning of *Parker v Highland Park,* 404 Mich 183; 273 NW2d 413 (1978). Separate applications for leave to appeal filed by both school districts and their respective employees were granted by this Court and the matters were consolidated.

Under MCL 691.1407; MSA 3.996(107), a governmental agency is immune from tort liability when it is engaged in the exercise or discharge of a governmental function. We will address separately the questions of whether the governmental immunity statute applies, 1) to the school districts, and

2) to the individual employees of the school districts.

## The School Districts

Plaintiffs, in order to state a valid claim against a governmental agency such as a school district, must plead facts in avoidance of governmental immunity. *McCann v Michigan,* 398 Mich 65, 77; 247 NW2d 521 (1976). This means that plaintiffs must demonstrate either that the school districts' activity comes within one of the statutory exceptions to governmental immunity or that the activity did not constitute the exercise or discharge of a governmental function.

In the case at bar, the amended complaint contained an allegation of "premises liability", which apparently sought to invoke the public building exception to governmental immunity, MCL 691.1406; MSA 3.996(106).[1] However, the trial court did not address the public building exception in its opinion and plaintiffs on appeal do not argue its applicability. Upon a review of the amended

---

[1] MCL 691.1406; MSA 3.996(106), provides in part:

"Governmental agencies have the obligation to repair and maintain public buildings under their control when open for use by members of the public. Governmental agencies are liable for bodily injury and property damage resulting from a dangerous or defective condition of a public building if the governmental agency had actual or constructive knowledge of the defect and, for a reasonable time after acquiring knowledge, failed to remedy the condition or to take action reasonably necessary to protect the public against the condition. Knowledge of the dangerous and defective condition of the public building and time to repair the same shall be conclusively presumed when such defect existed so as to be readily apparent to an ordinary observant person for a period of 90 days or longer before the injury took place. As a condition to any recovery for injuries sustained by reason of any dangerous or defective public building, the injured person, within 120 days from the time the injury occurred, shall serve a notice on the responsible governmental agency of the occurrence of the injury and the defect. The notice shall specify the exact location and nature of the defect, the injury sustained and the names of the witnesses known at the time by the claimant."

complaint, we find that plaintiffs have failed to plead facts in avoidance of governmental immunity under the public building exception. The premises liability count alleges that Pontiac Northern negligently failed to provide a separate locker room and facilities for the visiting Walled Lake team. The premises liability allegation stems not from a defective or dangerous condition in the building itself but from the defendants' alleged failure to properly supervise activities conducted within the building. The public building exception is therefore inapplicable. See *Vargo v Svitchan,* 100 Mich App 809; 301 NW2d 1 (1980); *Belmont v Forest Hills Public Schools,* 114 Mich App 692, 698; 319 NW2d 386 (1982). Moreover, plaintiffs have failed to comply with the notice requirement contained in the statute.

The remaining question is whether the school districts were engaged in the exercise or discharge of a governmental function. The Supreme Court, despite numerous attempts, has to date been unable to reach a clear majority as to what is meant by the legislative term "governmental function". The Court's most recent pronouncement occurred in *Ross v Consumers Power Co,* 415 Mich 1; 327 NW2d 293 (1982). This Court is aware that with the recent changes in the membership of the Supreme Court, the law is likely to change with the issuance of the Court's next opinion on the subject. Nonetheless, it is the duty of this Court, being bound under the doctrine of stare decisis, to decide the instant appeal consistent with the law as it now exists rather than to attempt to predict the positions which may ultimately be adopted by newly seated members of the Supreme Court.

The four presently seated justices who have voiced opinions on the issue are apparently irre-

concilably divided. Justices RYAN and WILLIAMS hold to the "common good of all test" while Justices KAVANAGH and LEVIN continue to look to whether the agency's activity is "of essence to governing".[2] Justices CAVANAGH, RILEY, and BRICKLEY have not during their tenure on the Supreme Court expressed an opinion on the issue.

In the wake of the three-three-one split which existed in the Supreme Court prior to November, 1982, several panels of this Court have applied the standard enunciated by the late Justice MOODY in *Parker v Highland Park, supra.* This practice was recognized, and indeed, approved by Justice RYAN in *Ross, supra:*

"As an innovative and logical alternative, several panels of the Court of Appeals have treated Justice MOODY's version of the "essence of governing" test as though it were the rule, not because any other member of this Court has subscribed to it—none has—but because, as a practical matter, on the facts of a particular case, Justice MOODY, employing his own test, was probably the tie-breaker for determining whether an activity is a 'governmental function'. That is what occurred in the decisions of *Perry [v Kalamazoo State Hospital,* 404 Mich 205; 273 NW2d 421 (1978)] and *Parker, supra."* *Ross, supra,* p 12.

Justice MOODY, writing separately in *Parker,* summarized his version of the test as follows:

"To delineate a complete and balanced definiton of governmental function within a simplistic format would be presumptuous. However, as a basic guideline, the crux of the governmental essence test should be founded upon the inquiry whether the purpose, planning and carrying out of the activity, due to its unique

---

[2] See *Ross v Consumers Power Co,* 415 Mich 1; 327 NW2d 293 (1982), for a complete explanation of the positions adhered to by the various justices.

character or governmental mandate, can be effectively accomplished only by the government. Unless liability would be an unacceptable interference with government's ability to govern, activities that fall outside this perimeter, although performed by a government agency, are not governmental functions and therefore not immune." *Parker, supra,* p 200.

We recognize that Justice MOODY's test has never been the law of this state and that it has not been adopted by even one of the present members of the Supreme Court. Nonetheless, it is this Court's duty, in the absence of clear direction from the Supreme Court, to adopt and apply what it perceives to be the appropriate rule of law. In our opinion, Justice MOODY's test, which embraces a middle-ground approach between the "common good of all test" on the one hand and the "of essence to governing" test on the other, represents the better view. We will therefore apply Justice MOODY's test to the present facts.

The recent panels of this Court have consistently held that the operation of a public school is a governmental function. *Weaver v Duff Norton Co,* 115 Mich App 286, 289; 320 NW2d 248 (1982); *Belmont v Forest Hills Public Schools, supra.* However, this simple statement of the rule is not sufficient. In determining whether an activity is a governmental function, the focus must be on the precise activity giving rise to plaintiffs' claim rather than on the overall operations of the agency. *Weaver, supra,* p 292. Accordingly, the question is whether the school districts' operation of extracurricular sports programs constitutes a governmental function.[3]

---

[3] The trial court focused on the narrow activity of supervising a locker room following an extracurricular sports event. We believe the court narrowed the focus too far. In this regard, we agree with Judge DANHOF's dissent in *Bokano v Wayne-Westland Community Schools,* 114 Mich App 79, 86-88; 318 NW2d 613 (1982).

In *Churilla v East Detroit School Dist,* 105 Mich App 32; 306 NW2d 381 (1981), the plaintiff minor, a junior high school student and a member of the school's football team, was injured during a football practice. Judge BASHARA, writing for the majority, applied Justice MOODY's test and held that the school's operation of a football program was a governmental function.[4] Similarly, in *Deaner v Utica Community School Dist,* 99 Mich App 103; 297 NW2d 625 (1980), the plaintiff was injured during a wrestling class which was part of his high school's physical education program. Applying Justice MOODY's test, the Court found that the defendant school was engaged in the exercise of a governmental function in operating the physcial education class.

In our opinion, the school districts' operation of extracurricular sports programs such as the girls' basketball programs here involved provides opportunities to student athletes which, as a practical matter, could not be provided except through operation of the public schools. We also view such programs as an adjunct of the school districts' statutory mandate to provide students with physical education, MCL 380.1502; MSA 15.41502, and they are an aspect of the schools' day-to-day operations. We conclude that the purpose, planning, and carrying out of such extracurricular programs can only be effectively accomplished by the school districts. Under Justice MOODY's test, therefore, we find that the school districts were engaged in a governmental function. The trial court erred in failing to grant summary judgment in their favor.

---

[4] Judge BRONSON, dissenting in *Churilla v East Detroit School Dist,* 105 Mich App 32; 306 NW2d 381 (1981), and writing for the majority in *Gaston v Becker,* 111 Mich App 692; 314 NW2d 728 (1981), strongly criticized the *Churilla* decision. He holds the view that a school district is immune from tort liability only as to those activities which relate to education *qua* education. *Gaston, supra,* p 697.

### THE SCHOOL DISTRICT EMPLOYEES

The individual employees named in the amended complaint are the superintendents, athletic directors, principals, and basketball coaches of the two schools, plus an assistant vice-principal of Walled Lake and a staff assistant of Pontiac Northern. The amended complaint alleges that defendants were negligent in failing to assure that the students under their supervision were not unreasonably exposed to harm.

Two separate tests have evolved for determining whether individual employees of an agency engaged in a governmental function are protected by the cloak of immunity. One test looks only to whether the individual defendants were acting within the scope of their employment. If so, they are entitled to the protection of governmental immunity. See *Gaston v Becker,* 111 Mich App 692, 699; 314 NW2d 728 (1981); *Shwary v Cranetrol Corp,* 119 Mich App 736; 326 NW2d 627 (1982). The other test provides immunity where the individual was fulfilling a discretionary, as opposed to ministerial, duty. *Cook v Bennett,* 94 Mich App 93; 288 NW2d 609 (1979); *Willis v Nienow,* 113 Mich App 30; 317 NW2d 273 (1982). Unfortunately, neither test has been endorsed by a clear majority of the Supreme Court. See *Bush v Oscoda Area Schools,* 405 Mich 716; 275 NW2d 268 (1979), and *Lockaby v Wayne County,* 406 Mich 65; 276 NW2d 1 (1979). Panels of this Court are divided over the interpretation to be given the multiple opinions issued in *Bush* and *Lockaby.*

In *Bush,* a suit was brought against a school district, a teacher, a principal, and a superintendent. The Supreme Court issued four opinions. Concerning the individual liability of the school district employees, Justice WILLIAMS abandoned

the ministerial-discretionary test, finding that *"ultra vires* activities of public employees are the only ones not protected by governmental immunity because the exercise or discharge of a governmental function is not involved". *Bush, supra,* p 734. Justices LEVIN, KAVANAGH, and FITZGERALD concluded that "[t]he complaint did not state claims against the individual defendants", without providing an analysis. *Bush, supra,* p 733. Justice MOODY found the individual defendants immune from liability as to ordinary negligence because they "were performing primarily discretionary activities that are of essence to government". *Bush, supra,* p 734. Justice COLEMAN concurred with Justice MOODY on this issue. Justice RYAN also found no liability on the part of the individual defendants without discussing the ministerial-discretionary test.

In *Gaston v Becker, supra,* Judge BRONSON offered the following interpretation of the *Bush* and *Lockaby* decisions:

"We note Judge BASHARA's partial dissent in *Cook* in which he observes that the governmental immunity statute does not distinguish between discretionary and ministerial acts. Relying on Justice WILLIAMS' opinion in *Bush,* Judge BASHARA contends that the proper test to apply is merely whether the principal and superintendent were acting within the scope of their employment. If so, they cannot be held liable.

"We are inclined to agree with Judge BASHARA's view. However, in our opinion, to adopt this position requires some comment on Justice MOODY's statement in *Bush* that the individual defendants, who were held immune from liability, were engaged primarily in the exercise of 'discretionary activities'. Justice MOODY's opinion at least suggests that the discretionary-ministerial dichotomy does indeed have continuing vitality.

"It is our belief that Justice MOODY's subsequent

opinion in *Lockaby v Wayne County,* 406 Mich 65, 83-84; 276 NW2d 1 (1979), shows that he, like Justice WILLIAMS, is really concerned with whether the individual defendants were acting within the scope of their employment as opposed to whether their activities were discretionary. In *Lockaby,* Justice MOODY stated:

" 'However, plaintiff fails to state a cause of action against the defendants under Count II of his complaint. The operation of a county jail is essentially a governmental function. The county is, therefore, immune under this claim. See *Parker, supra; Perry v Kalamazoo State Hospital,* 404 Mich 205; 273 NW2d 421 (1978). In addition, the officers and employees of the county, while acting within the scope of their employment maintaining a jail, primarily are performing essential public duties. Thus, they are immune from alleged negligent actions or selection of personnel. See *Bush v Oscoda Area Schools,* 405 Mich 716; 275 NW2d 268 (1979).' *Id.,* 84.

"As can be seen, Justice MOODY did not give the slightest hint that a distinction between discretionary and ministerial activities was important to his decision. We believe his reference in *Bush* to 'discretionary activities' had no significance to his holding." (Footnote omitted.) *Gaston, supra,* pp 698-699.

It should be noted that Justice COLEMAN's opinion in *Lockaby,* joined by Justice RYAN, also found the individual defendants immune based on the "scope of employment" standard:

"In addition, as noted by Justice MOODY in his opinion in the case at bar, the county's officers and employees, while acting in the scope of their employment operating and maintaining a jail, are likewise immune." *Lockaby, supra,* p 79.

Needless to say, this area of the law has become even more unsettled with the recent changes in the membership of the Supreme Court.

It is our opinion that the proper standard to

determine whether individual employees are entitled to governmental immunity is whether they were acting within the scope of their employment. If so, they are immune from liability. *Shwary, supra; Lewis v Beecher School System,* 118 Mich App 105, 111; 324 NW2d 779 (1982); *Gaston, supra; Everhart v Roseville Community Bd of Ed,* 108 Mich App 218, 223; 310 NW2d 338 (1981). *Cf., Willis v Nienow, supra; Layton v Quinn,* 120 Mich App 708; 328 NW2d 95 (1982).

Plaintiffs' allegations against the defendant employees sound in ordinary negligence. Plaintiffs do not assert that defendants' acts were *ultra vires* or outside the scope of their employment. Defendant employees are therefore entitled to governmental immunity.

Reversed and remanded for entry of summary judgment in favor of defendants-appellants.