## BOULET v BRUNSWICK CORPORATION

Docket No. 61773. Submitted October 14, 1982, at Detroit.—Decided
June 6, 1983. Leave to appeal applied for.

Laurent Boulet, individually and as next friend of David Boulet,
brought an action against the Brunswick Corporation, Law-
rence Kaye, Mel Anderson, and others, for damages for injuries
sustained in a high school football game which left David
Boulet a quadriplegic. In a prior appeal to this Court venue in
this action was determined to lie in the Macomb Circuit Court.
107 Mich App 589 (1981). Thereafter, the Macomb Circuit
Court granted defendants Lawrence Kaye and Mel Anderson's
motion for summary judgment on the basis that as the head
and assistant coaches of David Boulet's public school team they
were immune from suit because of governmental immunity.
Plaintiffs appeal alleging that the trial court, George R. Denew-
eth, J., erred in granting the motion and judgment. *Held:*

1. The trial court did not err in granting the summary
judgment. A public school is entitled to governmental immu-
nity in the operation of its athletic program, including the
administration and supervision of a football program. Teachers
and supervisors of the programs are entitled to governmental
immunity when they have performed their duties within the
scope of their employment.

2. A physical education program, as part of the general
curriculum or as an extracurricular activity, is in furtherance
of and an integral part of the total public education provided to
students.

3. Even though a football program could be administered and
provided for by the private sector the school, teachers, and

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 8, 9] 57 Am Jur 2d, Municipal, School, and State Tort Liability
§ 12.

68 Am Jur 2d, Schools § 319 *et seq.*

Modern status of doctrine of sivereign immunity as applied to
public schools and institutions of higher learning. 33 ALR3d 703.

[2] 68 Am Jur 2d, Schools § 283.

[4-9] 68 Am Jur 2d, Schools § 5.

supervisors are entitled to governmental immunity when such a program is provided as part of a public school education.

Affirmed.

T. M. BURNS, P.J., dissented and would hold:

1. Under the present test for determining whether or not governmental immunity protects an individual or an entity courts ask first whether or not the particular activity is a governmental function and then whether or not the activity falls within the exercise or discharge of that function.

2. The operation of an extracurricular football program by a public high school does not fit within Justice MOODY's "effectively accomplished only by the government" test for governmental immunity.

3. Football is not a part of education *qua* education and is by no means essential to a school's operation.

4. Governmental immunity should not be applied when the governmental function involved is clearly tangential to government itself.

5. The operation of a public high school junior varsity football program only tenuously relates to the government's essential purpose of promoting public justice and a ruling that governmental immunity does not apply in this case would not impair either the school's or the government's ability to provide public justice.

He would reverse.

### OPINION OF THE COURT

1. SCHOOLS — ATHLETIC PROGRAMS — TORTS — GOVERNMENTAL IMMUNITY.

A public school is entitled to governmental immunity in the operation of its athletic program, including the administration and supervision of a football program; teachers and supervisors of the programs are entitled to governmental immunity when they have performed their duties within the scope of their employment.

2. SCHOOLS — ATHLETIC PROGRAMS.

A physical education program, as part of the general curriculum or as an extracurricular activity, is in furtherance of and an integral part of the total public education provided to students.

3. SCHOOLS — ATHLETIC PROGRAMS — FOOTBALL PROGRAMS — GOVERNMENTAL IMMUNITY.

A public school and its teachers and supervisors are entitled to governmental immunity in cases resulting from the operation

of a football program provided as part of a public school education even though a football program could be administered and provided for by the private sector.

Dissent by T. M. Burns, P.J.

4. Governmental Immunity — Test — Governmental Functions.

*Michigan's courts, in determining whether or not governmental immunity protects an individual or an entity, ask first whether or not the particular activity is a governmental function and then whether or not the activity falls within the exercise or discharge of that governmental function.*

5. Governmental Immunity — Governmental Functions — Test.

*The determination of whether an activity constitutes a governmental function should be founded upon the inquiry whether the purpose, planning, and carrying out of the activity, due to its unique character or governmental mandate, can be effectively accomplished only by the government; unless liability would be an unacceptable interference with government's ability to govern, activities that fall outside this perimeter, although performed by a government agency, are not governmental functions and therefore not immune from liability.*

6. Governmental Immunity — Public Schools.

*A public school's operations constitute a governmental function, however, not every activity carried out by a school system is automatically entitled to governmental immunity and thus courts are to focus on the relevant particular activity to determine whether or not it is a governmental function protected by governmental immunity.*

7. Governmental Immunity — Public Schools — Extracurricular Football Programs.

*The operation of an extracurricular football program by a public high school is not an activity which may be effectively accomplished only by the government; football is not a part of education* qua *education and is not essential to a school's operation.*

8. Governmental Immunity — Functions Tangential to Government.

*Governmental immunity should not be applied when the governmental function involved is clearly tangential to government itself.*

9. GOVERNMENTAL IMMUNITY — GOVERNMENT'S ESSENTIAL PURPOSE —
    PUBLIC JUSTICE — PUBLIC SCHOOLS — EXTRACURRICULAR FOOT-
    BALL PROGRAMS.

> *The essential purpose of government is to promote public justice;*
> *the providing of a public education furthers this goal, however,*
> *a high school junior varsity football program only tenuously*
> *relates to this purpose and, therefore, a decision to deny*
> *governmental immunity to the operation of such a program*
> *would not impair either the school's or the government's ability*
> *to provide public justice.*

*Frimet, Bellamy, Gilchrist & Lites, P.C.* (by
*Frederick B. Bellamy* and *Dan Ellis Champney),*
for plaintiffs.

*Ogne, Jinks, Ecclestone & Alberts, P.C.* (by
*Wayne L. Ogne* and *Bryan Cermak),* for Lawrence
Kaye and Mel Anderson.

Before: T. M. BURNS, P.J., and V. J. BRENNAN
and WAHLS, JJ.

V. J. BRENNAN, J. The facts are set forth in the
dissenting opinion. The sole issue for our consider-
ation is whether the trial court erred in granting
defendants Lawrence Kaye and Mel Anderson's
motion for summary judgment on the basis that
they were immune from suit because of govern-
mental immunity. MCL 691.1407; MSA 3.996(107).

We find no error on the part of the trial court. A
public school in the operation of its athletic pro-
gram, including the administration and supervi-
sion of a football program, is entitled to govern-
mental immunity. *Churilla v East Detroit School
Dist,* 105 Mich App 32; 306 NW2d 381 (1981).
Further, teachers and supervisors of the programs
are entitled to governmental immunity when they
have performed their duties within the scope of
their employment. *Regulski v Murphy,* 119 Mich
App 418; 326 NW2d 528 (1982). A physical educa-

tion program, as part of the general curriculum or as an extracurricular activity, is in furtherance of and an integral part of the total public education provided to students. While we recognize that there are football programs that exist through private organizations, we find that this fact alone does not preclude a finding that a public school or its teachers are entitled to governmental immunity in cases such as the present one where a football program is offered by a school that is otherwise entitled to governmental immunity where other programs are involved. In *Parker v Highland Park,* 404 Mich 183, 200; 273 NW2d 413 (1978), Justice Moody noted that, "it would be incongrous to find that the operational activities of some public agencies are other than governmental. Likewise, conceivably there could be essential governmental activity which would have some common analogy in the private sector." We find that even though a football program could be administered and provided for by the private sector, when these programs are provided as part of a public school education, the school, teachers, and supervisors are entitled to governmental immunity. *Grames v King,* 123 Mich App 573; 332 NW2d 615 (1983).

Affirmed.

Wahls, J., concurred.

T. M. Burns, P.J. *(dissenting).* Football is a governmental activity? Were defendants Kaye and Anderson making a governmental decision when they decided to send plaintiff David Boulet into a junior varsity high school football game? Does Detroit Lions head coach Monte Clark make a quasi-governmental decision when he decides to put a reserve into a game? For some reason that I

cannot fathom, the majority in this case along with the majority in *Churilla v East Detroit School Dist,* 105 Mich App 32; 306 NW2d 381 (1981), and the panel in *Grames v King,* 123 Mich App 573; 332 NW2d 615 (1983),[1] seem to think so. Because it stretches governmental immunity to absurd lengths, I cannot join the majority opinion.

On December 14, 1981, the trial court issued an order granting defendants Lawrence Kaye and Mel Anderson's motion for summary judgment. GCR 1963, 117.2(1). Plaintiffs appeal as of right.

This marks the third time this case appears before this Court. The first appeal concerned venue. 107 Mich App 589; 309 NW2d 680 (1981). The second appeal concerned plaintiffs' motion to amend the complaint to add the Warren Woods School District and Schutt Manufacturing Company as parties defendant. This Court issued an order granting the motion to amend on January 22, 1982. This appeal deals with the following facts.

Plaintiff David Boulet received a serious neck injury rendering him a quadriplegic on October 19, 1978, while participating in a junior varsity football game for Warren Woods High School. Defendant Lawrence Kaye was the head coach at the time; defendant Mel Anderson was the assistant coach. Defendant Brunswick Corporation had manufactured the helmet worn by David when he was injured.

Eventually, plaintiffs sued Kaye and Anderson alleging that they had failed to properly supervise, instruct, and train David Boulet to participate in the football program and that such failure proximately caused the injury. The trial judge granted

---

[1] Actually, *Grames* dealt with an injury sustained during a fight in a locker room after a girl's high school basketball game.

the summary judgment motion ruling that Kaye and Anderson were protected from tort liability by governmental immunity. MCL 691.1407; MSA 3.996(107).

Under the present test for determining whether or not governmental immunity protects an individual or an entity, we ask first whether or not the particular activity is a governmental function and then whether or not the activity falls within the exercise or discharge of that governmental function. *McCann v Michigan,* 398 Mich 65; 247 NW2d 521 (1976). The definition of what constitutes a governmental function has changed a number of times over the last several decades. In the past few years, however, the starting point has been *Parker v Highland Park,* 404 Mich 183; 273 NW2d 413 (1978). There, three justices adopted the traditional common-law "common good" definition for determining what is a governmental function. Three other justices applied a far more restrictive "essence of governing" test. Because of this split, this Court has used the late Justice Moody's middle approach:

"To delineate a complete and balanced definition of governmental function within a simplistic format would be presumptuous. However, as a basic guideline, the crux of the governmental essence test should be founded upon the inquiry whether the purpose, planning and carrying out of the activity, due to its unique character or governmental mandate, can be effectively accomplished only by the government. Unless liability would be an unacceptable interference with government's ability to govern, activities that fall outside this perimeter, although performed by a government agency, are not governmental functions and therefore not immune." 404 Mich 200.

Presently, the law in this state recognizes that a

public school's operations constitute a governmental function. *Bush v Oscoda Area Schools,* 405 Mich 716; 275 NW2d 268 (1979); *Lee v Highland Park School Dist,* 118 Mich App 305; 324 NW2d 632 (1982); *Belmont v Forest Hills Public Schools,* 114 Mich App 692; 319 NW2d 386 (1982); *Bokano v Wayne-Westland Community Schools,* 114 Mich App 79; 318 NW2d 613 (1982); *Everhard v Roseville Community Schools Bd of Ed,* 108 Mich App 218; 310 NW2d 338 (1981). But even if the school district itself is usually immune, we must still focus on the relevant particular activity to determine whether or not it is a governmental function protected by governmental immunity: "We are of the opinion that every activity carried out by a school system would not automatically be entitled to governmental immunity". *Cobb v Fox,* 113 Mich App 249, 255; 317 NW2d 583, 586 (1982). Furthermore, this Court noted in *Weaver v Duff Norton Co,* 115 Mich App 286, 292; 320 NW2d 248 (1982): "In determining whether a particular governmental activity is a governmental function, this Court is constrained to focus on the precise activity giving rise to a plaintiff's claim, rather than overall or principal departmental operations".

I simply cannot believe that the operation of an extracurricular football program by a public high school fits within Justice MOODY's "effectively accomplished only by the government" test for governmental immunity. Football is not a part of education *qua* education. See *Gaston v Becker,* 111 Mich App 692, 697; 314 NW2d 728 (1981). Football itself is by no means essential to a school's operation. Numerous schools do not have football programs. In fact, extracurricular activities like football often seem to be among the first budget cutbacks whenever a school district loses a millage

election. Furthermore, we note that many private schools have football programs.

Judge Bronson, dissenting in *Churilla, supra,* found that an extracurricular football program is not "of the essence of government" as defined by Justice Moody:

"I believe that an extracurricular football program is simply not of a uniquely governmental character or precipitated by governmental mandate. While MCL 380.1502; MSA 15.41502 mandates 'health and physical education' in the public schools, it does not require the maintenance of extracurricular athletic activities.[2] There is nothing uniquely governmental in the function of staging competitive athletic events. I also reject the idea that holding school districts liable for the negligent operation of a football program constitutes 'an unacceptable interference with government's ability to govern'.

"Nor do I believe a football program like the one in question here can only be accomplished through the government. It is true that the majority of football programs for high-school-aged participants are run through schools, and that Justice Moody considered the fact that private general hospitals exceeded governmental ones significant in holding that governmentally run general hospitals were not entitled to immunity. However, this factor is not dispositive and does not even clearly cut against the no-immunity view in this case. First, a number of extracurricular football programs are associated with private schools. Other football programs exist through private organizations and churches. Thus, there is an analogy to a similar function in the private sector. Second, if this factor were dispositive, I believe the result could be an anomalous situation in which school football programs would be entitled to immunity, but school baseball programs—

---

[2] In *Weaver, supra,* this Court emphasized the fact that MCL 380.1287(1); MSA 15.41287(1) authorizes a school district to offer vocational education when it found that the vocational education program involved was a governmental function.

because of the greater number of private leagues—
would not be exempt." 105 Mich App 37-38.

The majority in *Churilla* relied on four cases.
However, neither *Bush, supra,* nor *Deaner v Utica
Community School Dist,* 99 Mich App 103; 297
NW2d 625 (1980), dealt with an extracurricular
football program. Common sense and cases like
*Weaver, supra,* and *Cobb, supra,* instruct us to
look at the particular activity involved. Further-
more, both *Richards v Birmingham School Dist,*
348 Mich 490; 83 NW2d 643 (1957), *overruled on
other grounds, Williams v Detroit,* 364 Mich 231,
252; 111 NW2d 1 (1961), and *Lovitt v Concord
School Dist,* 58 Mich App 593; 228 NW2d 479
(1975), *overruled on other grounds, Galli v
Kirkeby,* 398 Mich 527, 536; 248 NW2d 149 (1976),
used the now discarded governmental/proprietary
test.

The difficulty in formulating and applying prin-
ciples for governmental immunity is that the rea-
sons justifying it remain unclear in the face of its
apparent lack of fairness.[3] Under governmental
immunity, the negligent appear to go free while
the innocent suffer.[4] However, many believe that a
government cannot function or afford to provide
the services desired by the taxpayers when the
government itself is liable for the negligent acts of
individual governmental employees. The myriad
attempts by Michigan courts to develop a standard
to apply governmental immunity have arisen from
the need to meet these competing demands.

[3] Although governmental immunity is constitutional, *Thomas v
Dep't of State Highways,* 398 Mich 1; 247 NW2d 530 (1976), as
exemplified in this case, it can still be unfair.

[4] Moreover, those injured while attending public school are left
uncompensated while those attending even a financially strapped
private school are not.

Because few of us can agree on the particular balance to be struck, we have been unable to articulate a workable standard. The Supreme Court's latest attempt to delineate standards ended in a 3-3 deadlock. *Ross v Consumers Power Co,* 415 Mich 1; 327 NW2d 293 (1982). In the face of this confusion, I believe that governmental immunity should not be applied when the "governmental function" involved is clearly tangential to government itself.

Government's essential purpose is to promote public justice. Providing public education furthers this goal. A high school junior varsity football program, however, only tenuously relates to this purpose. Ruling that governmental immunity does not apply in this case would not impair either the school's or the government's ability to provide public justice.

Furthermore, other methods of assuring that such football programs continue are fairer than this blanket application of a doctrine which reasonably might be assumed by the public not to apply in this case. An example is found in California where some school districts have responded to the abolition of governmental immunity[5] by requiring voluntary participants in extracurricular activities to sign written waivers of their right to sue and to obtain insurance to protect against the costs of injuries. This approach not only protects a student financially for his injuries but also informs him of the risks involved. Not only is David Boulet uncompensated for someone else's alleged negligence but I seriously doubt that he ever considered the doctrine of governmental immunity when he decided to play high school football. What ap-

---

[5] California abolished governmental immunity in *Muskopf v Corning Hospital Dist,* 55 Cal 2d 211; 11 Cal Rptr 89; 359 P2d 457 (1961).

proach would be fairer in the present case? The
majority's approach which leaves a quadriplegic
uncompensated for these injuries allegedly due to
someone else's negligence or an approach that
forces the student to realize the risks ahead of
time but compensates him through insurance? I
would reverse in this case.