COBB v FOX

Docket No. 49438. Submitted December 2, 1981, at Lansing.—Decided
February 17, 1982. Leave to appeal applied for.

Scott D. Seelhoff was struck and killed by an automobile driven
by James L. Fox shortly after being discharged from a school
bus across the road from his home. Seelhoff's mother, Sharon
Cobb, as administratrix of the estate of Scott D. Seelhoff,
brought an action for damages against Fox, the Fowler Board
of Education and the Fowler School District. The board and the
school district moved for summary and accelerated judgments
based upon governmental immunity. The motions were denied,
Clinton Circuit Court, Timothy M. Green, J. The school board
and the school district appeal by leave granted from the denial
of their motions. *Held:*

1. The maintenance and operation of a public school bus
system by a school district is a governmental function which is
subject to immunity from tort liability.

2. Plaintiff's claim that the manner of operation of the bus
system constituted a nuisance was insufficient to bring the
action within the nuisance exception to governmental immu-
nity. Only an intentional nuisance will defeat a claim of
governmental immunity, and the plaintiff did not plead facts
which would establish a nuisance. Further, she alleged only
negligent, not intentional, conduct.

3. The exception to the governmental immunity statute
which provides for liability for injury resulting from the opera-
tion of a governmentally owned vehicle is not applicable be-
cause, at the time of the accident, the bus had left the scene.

REFERENCES FOR POINTS IN HEADNOTES

[1] 68 Am Jur 2d, Schools § 5.
  Modern status of doctrine of sovereign immunity as applied to
    public schools and institutions of higher learning. 33 ALR3d 703.
[2] 72 Am Jur 2d, States, Territories and Dependencies § 106.
[3, 5] 68 Am Jur 2d, Schools § 322.
  Tort liability of public schools and institutions of higher learning
    for accidents associated with transportation of students. 34
    ALR3d 1210.
[4] 58 Am Jur 2d, Nuisances § 55.

This exception is applicable only where the operation of the governmentally owned vehicle causes the injuries.

Reversed.

1. GOVERNMENTAL IMMUNITY — SCHOOLS — NEGLIGENCE.

The operation of a public school is a governmental function; however, every activity carried out by a school system is not automatically entitled to governmental immunity.

2. GOVERNMENTAL IMMUNITY — NEGLIGENCE — GOVERNMENTAL FUNCTION.

The Court of Appeals, in determining whether an activity constitutes a governmental function, must focus on the particular activity involved and not on the governmental entity's overall or principal operation.

3. GOVERNMENTAL IMMUNITY — SCHOOLS — SCHOOL BUS SYSTEM.

The maintenance and operation of a school bus system by a public school district constitutes a governmental function for purposes of immunity from tort liability.

4. GOVERNMENTAL IMMUNITY — NUISANCE — INTENTIONAL NUISANCE.

The nuisance exception to governmental immunity is applicable only in the case of an intentional nuisance; to establish the necessary intent, a plaintiff must show that the defendant who created or continued the nuisance knew or must have known that harm to the plaintiff was substantially certain to follow as a result of the defendant's actions.

5. GOVERNMENTAL IMMUNITY — MOTOR VEHICLES — CAUSE OF INJURY — STATUTES.

The motor vehicle exception to the governmental immunity statute does not apply where the vehicle, a school bus, was no longer present at the time and place where a child who had previously alighted from the bus was struck by a vehicle operated by a third party; the injury must be caused by the operation of the governmentally owned vehicle before the exception will be applicable (MCL 691.1405; MSA 3.996[105]).

*Church, Wyble, Kritselis, Anderson & Robinson, P. C.* (by *Thomas H. Hay*), for plaintiff.

*Fraser, Trebilcock, Davis & Foster, P. C.* (by *Randy J. Hackney* and *Paula R. Latovick*), for defendant Fox.

*Willingham, Coté, Hanslovsky, Griffith & Fores-man, P. C.* (by *John A. Yeager),* for Fowler Board of Education and Fowler School District.

Before: V. J. BRENNAN, P.J., and ALLEN and T. C. MEGARGLE,* JJ.

V. J. BRENNAN, P.J. Plaintiff's eight-year-old son, Scott Douglas Seelhoff, was killed March 30, 1978, after being struck by an automobile driven by defendant Fox. The accident occurred shortly after Scott was discharged from a school bus operated by the Fowler Board of Education and Fowler School District (hereinafter defendants). Plaintiff, as administratrix of Scott's estate, commenced this action against Fox and the defendants. Defendants moved for summary and accelerated judgment based on governmental immunity, MCL 691.1407; MSA 3.996(107). The trial court denied the motions. Defendants now appeal by leave granted.

Scott was a second-grade student at a school located north of M-21 highway. Scott lived south of M-21. Wright Road, a heavily travelled road, runs perpendicular to M-21. Under the school's bussing program, there were three busses that stopped south of M-21. Bus stops one and three were on the west side of Wright Road. Bus stop two was on the east side. Scott lived on the east side of Wright Road. The bus stops were located so as to minimize students' crossing the road.

Scott could choose any one of the three busses. Students were not required to ride a specific bus and were not assigned to a specific stop. If Scott took the bus that discharged students at bus stops one or three, he would have to cross Wright Road to get home.

* Circuit judge, sitting on the Court of Appeals by assignment.

Approximately two to three years prior to the accident, parents petitioned the school board for another bus stop on the east side of the road. The fourth stop was requested to be opposite bus stop three. The superintendent of schools testified that the request was denied since bus stop two was only two blocks north of bus stop three, and he thought that the students could walk the additional two blocks.

Plaintiff, Scott's mother, testified that Scott and his brother did not take the school bus a majority of the time. When the boys took the bus, they took the bus that discharged them at bus stop two which was on the same side of Wright Road that they lived on, but two blocks farther than bus stop three. Approximately two to three weeks prior to the accident, plaintiff instructed her sons to take the bus that discharged them across from their home because of the weather and muddy conditions existing on their side of the road. The boys also preferred that bus because younger children rode on it.

Plaintiff also testified that she either met the boys once they were discharged from the bus so that she could walk them across the road or she stood in her doorway and would wave them across when they could cross safely.

On the day of the accident, plaintiff saw Scott and his brother walking home from the bus stop. She went into her house for a moment and did not see the accident occur. The testimony regarding the accident was conflicting. Scott's brother testified that Scott was waved across the road by a truck driver who had stopped for him, and was then hit by Fox's automobile. On the other hand, Fox and Kathryn Anderson, a witness, stated that Scott was hit when he entered the street without

looking for oncoming traffic. It was undisputed that the school bus that Scott rode did not strike him and there were no school busses within two blocks of the accident.

The first question for our consideration is whether the planning, maintenance and operation of a school bus system by a school district is an immune governmental function; specifically, whether the laying out of routes for school bus travel and the designation of school bus stops constitutes a governmental function.

MCL 691.1407; MSA 3.996(107), provides:

"Except as in this act otherwise provided, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided herein, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed heretofore, which immunity is affirmed."

Since the term "governmental function" is not defined in the statute, the determination of whether an activity is a "governmental function" is left to the courts. Recently, after interpreting several decisions of the Supreme Court regarding governmental immunity, *Parker v City of Highland Park,* 404 Mich 183; 273 NW2d 413 (1978), *Perry v Kalamazoo State Hospital,* 404 Mich 205; 273 NW2d 421 (1978), and *Bush v Oscoda Area Schools,* 405 Mich 716; 275 NW2d 268 (1979), this Court has found that the operation of a public school is a governmental function. *Gaston v Becker,* 111 Mich App 692; 314 NW2d 728 (1981), *Everhart v Board of Education of Roseville Community Schools,* 108 Mich App 218; 310 NW2d 338 (1981), *Smith v Mimnaugh,* 105 Mich App 209; 306

NW2d 454 (1981), *Churilla v School Dist for City of East Detroit,* 105 Mich App 32; 306 NW2d 381 (1981), *Deaner v Utica Community School Dist,* 99 Mich App 103; 297 NW2d 625 (1980). However, there is a disagreement among the panels of this Court as to whether all activities carried out by the school district would be immune governmental functions.

In *Deaner, supra,* a high school student suffered a sublaxation of two vertebrae, which resulted in quadriplegia, while wrestling in a physical education class with a fellow student. The trial court granted summary judgment on the ground of governmental immunity. On appeal, this Court affirmed stating:

"The government plays a pervasive role in the area of education, appropriating substantial state funds to that field and declaring education as a public policy. See Const 1963, art 8, §§ 1 & 2. The number of private schools is inadequate to meet the educational needs of the public. Finally, while private schools exist to educate some students, the provision of a free and universal education is a uniquely governmental function. Therefore, we would find that the trial court was correct in granting summary judgment to the school district based on governmental immunity." 99 Mich App 108.

*Deaner* has been cited for the proposition that *any* function carried out as part of the operation of a public school is an immune governmental function. In *Churilla, supra,* Judge BRONSON stated in his dissent that he disagreed with the majority's impliedly interpreting the *Deaner* opinion as holding that any function was governmentally immune.[1]

---

[1] Judge BRENNAN notes that he concurred with Judge BASHARA's opinion in *Churilla,* but not to the extent that it held that *every* function of a school district is an immune governmental function.

In *McIntosh, supra* (Judge HOLBROOK, *dissenting*), the majority found:

"We agree with Judge HOLBROOK's partial dissent * * * that the school board is immune from negligence in the hiring and supervision of defendant Becker. However, we disagree with the partial dissent to the extent that it implies that any function carried out as part of the operation of a public school is an activity leaving the school district without liability because of the doctrine of governmental immunity. We are not sure that the panel of this Court which decided *Deaner v Utica Community School Dist,* 99 Mich App 103; 297 NW2d 625 (1980), really meant to hold that every incident of a public school's operation constitutes a governmental function. Both Judge HOLBROOK's partial dissent in this case and the majority opinion in *Churilla v School Dist for City of East Detroit,* 105 Mich App 32; 306 NW2d 381 (1981), cite *Deaner* for this proposition, however.

\* \* \*

"The majority in *Churilla* and Judge HOLBROOK impliedly in this case analyzes Justice MOODY's position as an all-or-nothing approach. That is, either all of the governmental unit's operational activities are immune from tort liability or none are. We believe, however, that the emphasized portion of Justice MOODY's opinion in *Parker* supports the notion that the specific activities complained of and performed by the governmental agency are of paramount importance to resolving the immunity question and not simply the governmental unit's overall purpose." 111 Mich App 695-696.

We are of the opinion that every activity carried out by a school system would not automatically be entitled to governmental immunity. In determining whether an activity constitutes a governmental function, this Court has held that the focus must be on the particular activity involved and not on the entity's overall or principal operation.

*Feliciano v Dep't of Natural Resources,* 97 Mich App 101; 293 NW2d 732 (1980), *Berkowski v Hall,* 91 Mich App 1; 282 NW2d 813 (1979).

In other contexts, this Court has found that the following activities carried out by a school district enjoyed governmental immunity: furnishing crossing guards and overhead cross-walks, *Smith v Mimnaugh, supra,* conducting a student recess, *Everhart v Roseville Board of Education, supra,* and the administration and supervision of a football program, *Churilla v School Dist for City of East Detroit, supra.*

In *McNees v Scholley,* 46 Mich App 702, 707; 208 NW2d 643 (1973), this Court held that the laying out of routes for school bus travel and the designation of school bus stops constitutes a governmental function. However, *McNees* was decided before the common-law test of governmental immunity was rejected by a majority of the Supreme Court in *Parker, Perry* and *Bush.* Nonetheless, we find that the activities in question are governmental functions thereby providing the defendants with governmental immunity.

The School Code of 1976 regulates the operation of a school bus system. Thus, § 1321 provides in part:

> "(1) A board of a school district providing transportation for its resident pupils, except handicapped pupils transported under article 3, shall provide transportation for each resident pupil in the elementary and secondary grades for whom the school district is eligible to receive state school aid for transportation." MCL 380.1321(1); MSA 15.41321(1).

Additionally, § 1336 provides:

> "The state board or its authorized representative may

review, confirm, set aside, or amend the action, order, or decision of a board of education with reference to the routes over which pupils shall be transported, the distance pupils shall be required to walk, and the suitability and number of the vehicles and equipment for the transportation of the pupils." MCL 380.1336; MSA 15.41336.

The code also sets forth other regulations including specifications for school busses, required annual inspections by the state police, and requirements for the busses' distinctive coloration. MCL 380.1343, 380.1344; MSA 15.41343, 15.41344.

Historically, school bus activity has been closely tied to the operation of schools. Transportation to school, especially in rural areas, is an integral part of the public education provided to students. While it would be possible for a private bus system to transport children to and from school, the school district is better equipped to lay out routes and schedules for the pupils and to react to changes in the student population. Also, the cost of school bussing is not defrayed by private payment and, where offered, is provided to students without charge. Therefore, we find that the maintenance and operation of a school bus system by a school district constitutes an immune governmental function. The trial court erred by finding it was not.

We must next determine whether plaintiff's claim came within an exception to the defense of governmental immunity. Only intentionally created or continued nuisances in fact will defeat a claim of governmental immunity. *Rosario v City of Lansing,* 403 Mich 124; 268 NW2d 230 (1978), *Gerzeski v Dep't of State Highways,* 403 Mich 149; 268 NW2d 525 (1978). "To establish the necessary intent, a plaintiff must show that the defendant who created or continued the nuisance knew or

must have known that harm to the plaintiff was substantially certain to follow as a result of defendant's actions." *Ford v City of Detroit*, 91 Mich App 333, 336; 283 NW2d 739 (1979).

Plaintiff essentially alleged that the defendants failed to provide an adequate and safe bus route for the students in that the bus stops designated by the defendants were dangerous in view of the volume of traffic on Wright Road and the lack of adult supervision, and this conduct amounted to negligence and/or a nuisance. Plaintiff also set forth several duties owed to plaintiff's decedent and alleged that defendants failed to conform to those duties.[2]

While establishing routes and bus stops on busy highways so that young children might have to cross the highways could constitute negligence on

---

[2] Plaintiff's complaint provided in part:

"7. Defendant, Fowler School District's negligence, gross negligence and/or nuisance was a proximate cause or was a contributing factor to the damages as hereinafter set forth in that decedent's parents and/or guardians did in fact rely on the known student bus schedule, routing and timing and that:

"a) Defendant failed to provide an adequate and safe bus route for receiving and discharging of students which said route took into consideration traffic volume, availability of safe road crossing and distance for which students had to walk.

"b) Defendant by failing [sic] to comply with its own promulgated schedule of time and place for receiving and discharging of students required to ride school buses; and, the defendant failed to advise or otherwise inform parents and/or guardians of students riding school buses of deviations, detours or alternate routes which were to be utilized in transporting students.

"c) Defendant, its agents, employees or servants, failed to adequately supervise and attend to students who were required to cross streets, roads and/or highways and/or to otherwise provide for safe-passage and/or crossing of streets, roads and/or highways.

"d) Defendant failed to provide adult safety supervision at or near the point of passenger reception or discharge to assist students in crossing and/or traversing streets, roads and/or highways.

"As a result of the negligence, gross negligence and/or nuisance in the operation of their motor vehicle, to wit: school buses and that said condition did cause and was a proximate cause in plaintiff's decedent receiving and sustaining personal and bodily injury which resulted in cause [sic] and was approximate [sic] cause of death."

the part of the defendants, we find that an intentional nuisance in fact was not established by the facts alleged in plaintiff's complaint. It is virtually impossible for a school district to cover both sides of the street every few blocks in order to pick up and discharge its students in the safest possible manner. The defendants provided bus service that discharged students on both sides of Wright Road. Plaintiff's decedent was not required to take the bus that discharged him across the street from his home. He took that bus only so he could avoid muddy conditions on his side of the street, even though taking that bus necessitated his crossing the highway. The facts pled by plaintiff do not establish a nuisance created or continued by defendants. Further, plaintiff's complaint set forth several duties owed to plaintiff's decedent and alleged that defendants failed to conform to those duties, but such allegations described only negligent, not intentional, conduct. Plaintiff's complaint did not allege an intentional nuisance and thus does not come within the nuisance exception to governmental immunity.

Finally, plaintiff claims that she pled a cause of action under the motor vehicle exception to governmental immunity. Although the trial court did not address this issue, we find it necessary to decide the merits of plaintiff's claims.

MCL 691.1405; MSA 3.996(105) provides in part:

"Sec. 5. Governmental agencies shall be liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner * * *."

Plaintiff's complaint alleged that the defendants were negligent in the operation of the school bus

by designating an unsafe location as a school bus stop, by improper scheduling, and in failing to provide safety instructions or supervision. Plaintiff also alleged that the bus driver was negligent in failing to ascertain that his passengers had crossed the highway in safety, or were not otherwise subject to hazards before he left the area.

In *McNees v Scholley, supra,* a nine-year-old boy was injured when he was struck by an automobile while standing across the highway from a school bus stop. At the time of the accident, the boy was awaiting the arrival of his school bus. The plaintiffs claimed that the defendant school district was negligent in the operation of its school bus under MCL 691.1405; MSA 3.996(105). The Court rejected this contention holding:

"We are constrained to rule that under the facts in the instant case the school bus not being in a *'state of being at work * * * at the time and place the injury is [was] inflicted',* the plaintiffs do not have a cause of action under the terms of the subject statute." 46 Mich App 706-707. (Emphasis in original.)

Under *McNees,* plaintiff's complaint does not satisfy the motor vehicle exception because the school bus was not present at the time and place of the accident.

Moreover, while it has been held that the negligent operation of a motor vehicle may occur even though a vehicle is standing still, *Wells v Dep't of Corrections,* 79 Mich App 166; 261 NW2d 245 (1977), or where injury occurs because of improper loading, *Lockaby v Wayne County,* 406 Mich 65; 276 NW2d 1 (1979), injury must still be caused by the operation of the motor vehicle before the exception will be applicable. *Berger v City of Berkley,* 87 Mich App 361, 370-371; 275 NW2d 2

(1978), *Wells v Dep't of Corrections, supra.* In the instant case, since the accident occurred more than a block from the bus stop and after the bus had left the scene, the motor vehicle exception is not applicable.

Reversed.