MARTIN v STATE OF MICHIGAN

Docket No. 64357. Submitted March 8, 1983, at Lansing.—Decided
    September 26, 1983. Leave to appeal applied for.

   James Martin, a patient at the Michigan Institute of Mental
     Health, suffered injuries when he was struck over the head
     with a chair or table by another patient who had been assigned
     to share his room. James Martin, by his next friend, Pauline
     Martin, filed suit in the Court of Claims against the State of
     Michigan. Count I of the complaint was based on negligence,
     Count II was based on an alleged breach of the defendant's
     statutory duties, and Count III alleged that the defendant
     created and maintained a nuisance either per se or in fact. The
     court, Ray C. Hotchkiss, J., granted summary judgment for the
     defendant based on governmental immunity. The plaintiff ap-
     pealed. *Held:*

   The lower court's grant of summary judgment should be
     affirmed. The operation of a public mental health hospital is a
     governmental function entitled to immunity. Thus, summary
     judgment was proper as to Counts I and II. Summary judgment
     was also proper as to Count III. Although plaintiff alleged that
     defendant's acts and omissions constituted a nuisance either
     per se or in fact, the facts pled by the plaintiff do not establish
     either a nuisance intentionally created or continued by the
     defendant, or an act, occupation, or structure which is a dan-

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 61A Am Jur 2d, Pleading § 231.

[2] 20 Am Jur 2d, Courts § 201.

[3] 58 Am Jur 2d, Nuisances § 19.

[4] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 293.
    59 Am Jur 2d, Nuisances § 55.

[5, 8] 58 Am Jur 2d, Nuisances §§ 12, 13.

[6] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 301.
    Rule of municipal immunity from liability for acts in performance
      of governmental functions as applicable to personal injury or
      death as result of a nuisance. 56 ALR2d 1415.

[7] 40 Am Jur 2d, Hospitals and Asylums §§ 2, 20.
    Immunity from liability for damages in tort of state or governmen-
      tal unit or agency in operating hospital. 25 ALR2d 203.

[9] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 79.

gerous, offensive, or hazardous condition at all times and under any circumstances so as to constitute a nuisance per se. The plaintiff's allegations describe negligent conduct, not intentional conduct.

Affirmed.

M. J. Kelly, P.J., dissented. He agreed with the majority opinion that the operation of a state mental hospital is a governmental function and therefore within the purview of statutory governmental immunity. He believed that the plaintiff should be allowed to present his proofs as to the nuisance claim because the plaintiff alleged that the hospital failed to take certain actions regarding separation of residents, staff size, and provisions for a safe living environment. If the plaintiff could establish that those alleged failures were nuisances created by conduct intended to bring about the conditions, the existence of intentional nuisances would be established and governmental immunity would not be a defense. He would reverse.

### Opinion of the Court

1. Judgments — Summary Judgment — Court Rules.

   A court, when ruling on a motion for summary judgment on the ground that the opposing party has failed to state a claim upon which relief can be granted, should accept as true all of the nonmoving party's factual allegations as well as any conclusions which can reasonably be drawn therefrom and determine whether the nonmoving party's claim on the pleadings is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recovery; where immunity from suit is an issue the complaint must plead facts in avoidance of immunity (GCR 1963, 117.2[1]).

2. Courts — Court of Appeals — Stare Decisis.

   The Court of Appeals is powerless to overturn a Supreme Court holding.

3. Nuisance — Dangerous Condition.

   Liability for nuisance is predicated upon the existence of a dangerous condition.

4. Governmental Immunity — Nuisance — Nuisance Per Se — Nuisance in Fact.

   Governmental immunity does not bar liability for a nuisance per se; the maintenance of a nuisance in fact by a governmental body may also impose liability and overcome any claim of sovereign immunity.

5. NUISANCE — NUISANCE PER SE — NUISANCE IN FACT.

   The distinction between a nuisance per se and a nuisance in fact is an evidentiary one; a nuisance per se is an act, occupation, or structure which is a nuisance at all times and under all circumstances; a nuisance per se is established by proof of the act which created it and becomes a nuisance as a matter of law and at that point a defendant's liability is established; by contrast, a nuisance in fact is an act, occupation, or structure which becomes a nuisance because of circumstances and surroundings and whether or not a particular thing is a nuisance in fact is to be resolved by the trier of fact.

6. GOVERNMENTAL IMMUNITY — NUISANCE — INTENTIONAL NUISANCES — BURDEN OF PROOF — QUESTIONS OF FACT.

   Only intentionally created or continued nuisances in fact will overcome a defense of governmental immunity; to establish the necessary intent, a plaintiff must show that the defendant who created or continued the nuisance knew or must have known that harm to the plaintiff was substantially certain to follow as a result of defendant's actions.

DISSENT BY M. J. KELLY, P.J.

7. GOVERNMENTAL IMMUNITY — MENTAL HOSPITALS.

   Operation of a state mental hospital is a governmental function and, therefore, within the purview of statutory governmental immunity (MCL 691.1407; MSA 3.996[107]).

8. NUISANCE — NUISANCE PER SE.

   *A nuisance per se is a nuisance created by illegal conduct.*

9. NUISANCE — GOVERNMENTAL IMMUNITY.

   *The bar of governmental immunity is inapplicable where a trier of fact determines that the alleged nuisance was intentional, that the governmental agency intended to bring about the conditions which are in fact found to be a nuisance.*

*Stiles, Fowler & Tuttle* (by *Robert L. Harely, Jr.),* for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *George L. McCargar* and *Craig Atchinson,* Assistants Attorney General, for defendant.

Before: M. J. KELLY, P.J., and GRIBBS and R. L. TAHVONEN,* JJ.

R. L. TAHVONEN, J. Plaintiff appeals as of right from a trial court order granting defendant summary judgment under GCR 1963, 117.2(1). We affirm.

On April 23, 1980, plaintiff was a voluntary patient at the Michigan Institute of Mental Health in Dimondale. Between 9 a.m. and 10 a.m. on that day, plaintiff, while sleeping, was struck over the head with a chair or table by another patient who had been assigned to share plaintiff's room. On April 23, 1981, plaintiff's mother, Pauline Martin, filed suit on behalf of plaintiff, seeking damages for the injuries plaintiff sustained as a result of the attack. Count I of the complaint was based on negligence. Court II was based on an alleged breach of defendant's statutory duties. MCL 330.1708; MSA 14.800(708).

On June 26, 1981, defendant moved for summary judgment based on the governmental immunity statute. MCL 691.1407; MSA 3.996(107). Thereafter, plaintiff amended his complaint to add a count alleging that the "acts and failure to act on the part of defendant constitute the creation and maintenance of a nuisance, either per se, or in fact". The acts and omissions which plaintiff claimed to have constituted the creation and maintenance of the nuisance were specified in the complaint as follows:

"a) Failed to screen residents for known violent behavior patterns.
"b) Failed to separate residents with violent behavior patterns from other residents and, in particular, placed an individual with known violent behavior patterns in

---

* Circuit judge, sitting on the Court of Appeals by assignment.

the room with plaintiff as set forth in the above counts and paragraphs.

"c) Failed to provide adequate staff and personnel for the supervision of patients.

"d) Failed to provide a safe and secure living environment within said facility.

"e) Failed to warn voluntary residents of the dangers peculiar to the facility.

"f) Failed to provide constant supervision of the residents with known violent behavior patterns.

"g) Having knowledge of the fact that an inadequate staff existed to properly supervise residents in the facility, failed to safeguard the residents' well-being by securing additional personnel."

At the hearing on the motion for summary judgment, defendant argued that, although plaintiff had pled a claim for nuisance so as to avoid the defense of governmental immunity, plaintiff's action was still barred by governmental immunity because the nuisance claim was based on allegations of mere negligence. At the close of the hearing, the trial judge ruled as follows:

"The court has reviewed the matter and frankly the only sum and substance it really sees in the complaint as filed sounds in negligence. The procedural aspects and so on I don't think is subject to the attack of they just were set up that way to be a negligent nuisance, and that's the way it was intended to operate. I am sorry, but I cannot see the validity in the particular argument. Motion for summary judgment is granted."

The only question presented is whether the trial court erred in granting defendant summary judgment based on governmental immunity.

In passing upon a motion for summary judgment based on GCR 1963, 117.2(1), the trial court must accept as true all of the plaintiff's factual allega-

tions as well as any conclusions which can reasonably be drawn therefrom and determine whether the plaintiff's claim, on the pleadings, is so clearly unenforceable as a matter of law that no factual development can justify a right to recovery. Where immunity is involved, the complaint must plead facts in avoidance of immunity. *Armstrong v Ross Twp,* 82 Mich App 77, 82; 266 NW2d 674 (1978).

Although the common-law doctrine of governmental immunity has been abrogated, *Pittman v City of Taylor,* 398 Mich 41, 45-49; 247 NW2d 512 (1976), general immunity from tort liability is provided for by statute:

> "Except as in this act otherwise provided, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided herein, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed heretofore, which immunity is affirmed." MCL 691.1407; MSA 3.996(107).

Three principal tests have emerged for determining whether a particular activity is a governmental function. Justices WILLIAMS and RYAN and former Chief Justice COLEMAN have favored the "common good of all" test. If the act is for the common good of all without the element of special corporate benefit or pecuniary profit, there is no liability flowing from the activity. *Ross v Consumers Power Co,* 415 Mich 1; 327 NW2d 293 (1982).

The second test is the "essence of governing" test as employed by Justices KAVANAGH and LEVIN and former Justice FITZGERALD. Justices KAVANAGH, LEVIN, and FITZGERALD would give protection to only those activities which have no analogy

in the private sector but are *sui generis* governmental—of essence to governing.

The third test is the "essence of governing" test as understood and expressed by the late Justice MOODY.

"[T]he crux of the governmental essence test should be founded upon the inquiry whether the purpose, planning and carrying out of the activity, due to its unique character or governmental mandate, can be effectively accomplished only by the government. Unless liability would be an unacceptable interference with the government's ability to govern, activities that fall outside this perimeter, although performed by a governmental agency, are not governmental functions and therefore not immune." *Parker v Highland Park,* 404 Mich 183, 200; 273 NW2d 413 (1978).

In *Perry v Kalamazoo State Hospital,* 404 Mich 205; 273 NW2d 421 (1978), Justices KAVANAGH, FITZGERALD, and LEVIN found that, because the operation of a state mental hospital is not an activity which can be performed only by the government, it is not a governmental function and, therefore, tort actions arising from the negligent operation of a state mental hospital are not barred by governmental immunity. 404 Mich 215. Applying the "common good of all" test, Justices WILLIAMS, COLEMAN, and RYAN found that the operation of the state mental hospital was a government function and, therefore, that the hospital was immune from suit. 404 Mich 210-213.

The deciding vote in *Perry, supra,* was cast by Justice MOODY who, relying on the mandate of Const 1963, art 8, § 8, and MCL 330.1116; MSA 14.800(116) declaring that "services for the care, treatment or rehabilitation of those who are seriously mentally handicapped shall always be fostered and supported", found that public mental

health hospitals perform an essentially unique activity required by legislative action which could effectively only be accomplished by the government. Accordingly, Justice MOODY ruled that the state mental hospital was entitled to immunity. 404 Mich 214.

In the present case, relying on the dissenting opinion in *Perry, supra,* plaintiff argues that the operation of the Michigan Institute of Mental Health is not a governmental function. This argument must be rejected. This Court is bound by the doctrine of stare decisis. *Schwartz v Flint (After Remand),* 120 Mich App 449, 462; 329 NW2d 26 (1982). Although the composition of the Supreme Court has been substantially altered in recent months, thus leaving the continued validity of *Perry, supra,* open to question, *Perry, supra,* must still be followed here. Accordingly, since Counts I and II of plaintiff's amended complaint are based on negligence and an alleged breach of the statutory duties imposed upon state mental health facilities, those counts were properly dismissed. *Perry, supra.*

Plaintiff next contends that his first amended complaint sufficiently alleges a nuisance and that he has therefore pled facts in avoidance of immunity. According to plaintiff, the questions of whether a nuisance exists and whether the nuisance was negligently or intentionally created must be determined by a trier of fact.

A nuisance arises from the existence of a dangerous condition. *Rosario v Lansing,* 403 Mich 124, 132; 268 NW2d 230 (1978) (opinion of FITZGERALD, J.).

" 'Primarily, nuisance is a condition. Liability is not predicated on tortious conduct through action or inaction on the part of those responsible for the condition.

Nuisance may result from want of due care (like a hole in a highway), but may still exist as a dangeorus, offensive, or hazardous condition even with the best of care.' *Buckeye Union Fire Ins Co v Michigan,* 383 Mich 630, 636; 178 NW2d 476 (1970)."

In *Rosario, supra,* and *Gerzeski v Dep't of State Highways,* 403 Mich 149; 268 NW2d 525 (1978), the Supreme Court examined the impact of the nuisance doctrine on governmental immunity. Although no clear majority view emerged from the opinions, the result of the opinions is that governmental immunity does not bar liability for certain types of nuisances. *Ford v Detroit,* 91 Mich App 333, 335; 283 NW2d 739 (1979).

There are two categories of nuisances: nuisances per se and nuisances in fact. The latter category is further divided into intentional nuisances and negligent nuisances. *Gerzeski v Dep't of State Highways, supra.* A nuisance per se is an act, occupation, or structure which is a nuisance at all times and under any circumstances. Thus, the existence of a nuisance per se is established by proof of the act which created it and becomes a nuisance as a matter of law. The defendant's liability is established at that point. *Ford v Detroit, supra,* p 335.

In contrast, a nuisance in fact is a nuisance by reason of circumstances and surroundings, and an act may be found to be a nuisance in fact where its natural tendency is to create danger and inflict injury to person or property. The existence of a nuisance in fact is a question for the trier of fact, which may or may not find the existence of a nuisance from proof of the act and its consequences. *Ford v Detroit, supra,* pp 335-336.

The five members of the Court voting for reversal in both *Rosario, supra,* and *Gerzeski, supra,* disagreed as to whether all nuisances in fact may

defeat a defense of governmental immunity. One view, represented by Justice MOODY's opinion in *Gerzeski, supra,* p 154, would hold that only intentionally created nuisances in fact overcome the defense. The other view, set forth by Justice FITZGERALD, simply asserts that the distinction between negligently and intentionally created nuisances is irrelevant in fixing liability. *Gerzeski, supra,* p 154. Because the justices adopting the first view constituted the swing votes for reversal in both cases, a "cautious reading of these cases" indicates that, at present, only intentionally created or continued nuisances in fact will overcome the defense of governmental immunity. *Ford v Detroit, supra,* pp 335-336. See also *Cobb v Fox,* 113 Mich App 249, 257-258; 317 NW2d 583 (1982).

An intentional nuisance is one "created by conduct intended to bring about conditions which, in fact, constituted a nuisance". *Gerzeski, supra,* p 161. To establish the necessary intent, a plaintiff must show that the defendant who created or continued the nuisance knew or must have known that harm to the plaintiff was substantially certain to follow as a result of defendant's actions. *Rosario, supra,* p 143, fn 2; *Gerzeski, supra,* pp 161-162; *Ford v Detroit, supra,* p 336.

In the case at bar, although plaintiff states in his amended complaint that defendant's acts and omissions constituted a nuisance, either per se or in fact, the facts pled by plaintiff do not establish either a nuisance per se or a nuisance intentionally created or continued by defendant. The facts as pled certainly do not establish an act, occupation, or structure which is a dangerous, offensive, or hazardous condition at all times and under any circumstances so as to constitute a nuisance per se. Furthermore, although defendant may have

been negligent in failing to screen and separate violent residents, failing to provide adequate staff to supervise the residents and failing to warn voluntary residents of the dangers peculiar to the facility, an intentional nuisance was not shown by the allegations in plaintiff's amended complaint. There are no allegations in the amended complaint showing that agents of defendant, assuming a dangerous condition was created, knew or must have known that the harm to plaintiff was substantially likely to follow as a result of the alleged actions and omissions. In this Court's opinion, plaintiff's allegations only describe negligent, not intentional, conduct. Accordingly, plaintiff has failed to plead facts in avoidance of immunity and summary judgment as to Count III of plaintiff's complaint was also proper.

Affirmed. No costs, a public question.

GRIBBS, J., concurred.

M. J. KELLY, P.J. *(dissenting)*. I dissent. I agree with the majority's analysis that operation of a state mental hospital is a governmental function and, therefore, within the purview of statutory governmental immunity. See *Perry v Kalamazoo State Hospital*, 404 Mich 205; 273 NW2d 421 (1978). See generally MCL 691.1407; MSA 3.996(107). I must take exception, however, to the majority's analysis of Michigan nuisance law.

In the present case, we are faced with examining the scope of nuisance law and its effect on the defense of governmental immunity. This issue was addressed by the Supreme Court in two companion cases, *Rosario v Lansing*, 403 Mich 124; 268 NW2d 230 (1978) (3-2-2 decision), and *Gerzeski v Dep't of State Highways*, 403 Mich 149; 268 NW2d 525 (1978) (3-2-2 decision). Of these two cases, *Gerzeski*,

although a multiple-opinion decision, appears to have some semblance of agreement among a majority of the justices as to the proper evidentiary forms of nuisances and their effect on governmental immunity. There, the late Justice MOODY, joined by Justice WILLIAMS, presented a discussion of negligence law. Justices FITZGERALD, KAVANAGH, and LEVIN, writing separately, stated that:

"Justice MOODY has aptly analyzed the semantic difficulties inherent in our nuisance case law. We agree with that analysis insofar as it explains the different methods of classifying nuisance for evidentiary and liability considerations." *Gerzeski, supra,* p 153.[1]

Thus, it appears, at least to this interested observer, that Justice MOODY's discourse on nuisance law stands as the Supreme Court's controlling word in this area.

Justice MOODY defines nuisances per se as "nuisances created by illegal conduct". *Gerzeski, supra,* p 161. In contrast, the majority in the instant case defines a nuisance per se as "an act, occupation, or structure which is a nuisance at all times and under any circumstances".[2] Although Justice MOODY, as well as Justice FITZGERALD in *Rosario,* did quote from earlier Michigan cases which contained definitions of nuisance per se similar to that used by the majority in the instant case, it is not clear that such a definition was adopted by the Supreme Court. Rather, it is apparent that Justice

[1] Justices FITZGERALD, KAVANAGH, and LEVIN, however, would apparently proceed further than Justice MOODY and find no governmental immunity defense to *any* type of nuisance. See *Gerzeski, supra,* pp 153-154; *Rosario, supra,* pp 129-141.

[2] Although the majority opinion provides no citation in support of this definition, a similar definition can be found in *Ford v Detroit,* 91 Mich App 333, 335; 283 NW2d 739 (1979). Similarly, however, *Ford* cited no authority in support of this definition as well.

MOODY looked not to whether a nuisance was at all times a nuisance, but rather to the conduct which created the nuisance. See *Gerzeski, supra,* pp 160-162. Indeed, Justice MOODY stated that:

"More importantly, the definition of an intentional nuisance clearly reflects that the nature of the conduct complained of in an intentional nuisance situation is more akin to *conduct creating a per se nuisance* than the careless or neglectful conduct which produces a negligent nuisance." *Gerzeski, supra,* p 161 (emphasis added).

I believe that the majority has also improperly analyzed the present definition of an intentional nuisance. The majority opines that a "plaintiff must show that the defendant who created or continued the nuisance knew or must have known that harm to the plaintiff was substantially certain to follow as a result of defendant's actions". The element of intent in an intentional nuisance, however, is directed at intentionally creating the conditions which are in fact found to be a nuisance, not intentionally harming the plaintiff. Indeed, Justice MOODY stated that

"[t]he bar of governmental immunity is inapplicable when a trier of fact determines as in this case, that the alleged nuisance was intentional, *i.e.,* that the governmental agency intended to bring about the conditions which are in fact found to be a nuisance." *Gerzeski, supra,* p 162.

Plaintiff has alleged that the hospital failed to take certain actions regarding separation of residents, staff size, and provisions for a safe living environment. If plaintiff can establish that these "failures" were nuisances "created by conduct intended to bring about the conditions", plaintiff

would have demonstrated the existence of inten-
tional nuisances. Thus, governmental immunity
would not be a defense to plaintiff's claim.

I would reverse and allow plaintiff to present his
proofs.