# STATE OF MICHIGAN

# COURT OF APPEALS

---

BRENT GUTWEIN and MARTI GUTWEIN,

Plaintiffs/Counter-Defendants-
Appellants/Cross-Appellees,

v

WILLIAM J. KAHLE, also known as WILLIAM
J. KALE, and RITA D. KAHLE,

Defendants/Counter-Plaintiffs-
Appellees/Cross-Appellants,

and

ST. JOSEPH COUNTY ROAD COMMISSION,

Defendant.

UNPUBLISHED
January 26, 2017

No. 329919
St. Joseph Circuit Court
LC No. 13-001016-CH

---

Before: MURPHY, P.J., and METER and RONAYNE KRAUSE, JJ.

PER CURIAM.

Both parties appeal by right from different aspects of the trial court's order holding that neither party held riparian rights in a small piece of lakefront property that lies adjacent to plaintiff's property, across the road from defendant's property, and entirely within the road right-of-way. Plaintiff also appeals by right the portion of the trial court's order granting summary disposition in favor of defendants regarding plaintiffs' other nuisance and trespass claims. This case arises out of defendants' erection and use of a dock and stairway thereto on the disputed property. For ease of reference, we will refer to plaintiffs as the Gutweins and defendants as the Kahles. The Road Commission was dismissed from the proceedings in the trial court by stipulation and is not participating in this appeal. We affirm in part, reverse in part, and remand.

The parties to this appeal, the Gutweins and the Kahles, own property nominally across the road from each other and adjacent to Klinger Lake. Due to the odd shapes of the parcels, at the southern end of their respective properties, the Kahles' land is separated from the lake only by the roadway, Crooked Creek Road. However, the lake side of the road, and the Gutweins' property, is part of the Hunt's Shores subdivision; the Kahles' property and the landward side of the road are part of the Dogwood Shores subdivision. The Gutweins' property has lake frontage,

-1-

whereas the Kahles' property does not. Public plat maps show that the road was in existence at least since 1872, at which time both subdivisions were owned by a common owner. The land that eventually became Dogwood Shores was conveyed by the last common owner in 1911, and the land that eventually became Hunt's Shores was conveyed in 1922; both conveyances described the center of Crooked Creek Road as the boundary line.

The dock at issue is located on a small stretch of shore between the southernmost tip of Lot 1 of Hunt's Shores, which is the Gutweins' property, and the southernmost tip of the property description for the Hunt's Shores subdivision, which is bounded by a bridge covering an outlet from Klinger Lake. That stretch of shore is entirely road right-of-way on any pertinent plat map, and it also lies outside of a line drawn from the tip of Lot 1 to the center of the road. The original developer of Hunt's Shores conveyed to the Gutweins a quitclaim deed to that area, which otherwise had been dedicated to the use of the public. Meanwhile, there was some dispute as to whether the Kahles actually owned land all the way south to the outlet and thus actually across the road from the dock. However, the 1911 conveyance extended all the way to the outlet, and the Kahles presented extensive evidence, including several deeds conveying the so-called "outlet parcel" to them, establishing that they did own that property. Notwithstanding their contention that no part of the Dogwood Shores subdivision abuts the lake, the Gutweins do not dispute on appeal that the Kahles own land all the way south to the outlet and thus directly across the road from the dock, so we find that fact established. The Dogwood Shores subdivision plat technically does not include any portion of the road. The developer eventually quitclaimed the Dogwood side of the road to the Road Commission.

The Kahles, and their immediate predecessors in interest, used the dock since 1985. In 2012, the Gutweins asked defendants to refrain from doing so the next year; they subsequently filed suit, alleging trespass, private nuisance, public nuisance, and nuisance per se. The trial court required the Road Commission to be joined as a party, although it was subsequently dismissed by stipulation. The trial court found that neither the Kahles, the Gutweins, nor the Road Commission had any riparian[1] rights to the stretch of shore at issue, but that defendants' ability to maintain the dock and stairway were subject to the Road Commission. It also found that the Gutwiens' non-private nuisance claims were unmaintainable without joining White Pigeon Township as a party. Both the Gutweins and the Kahles appeal.

A grant or denial of summary disposition is reviewed de novo on the basis of the entire record to determine if the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). When reviewing a motion under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint, this Court considers all evidence submitted by the parties in the light most favorable to the non-moving party and grants summary disposition only where the evidence fails to establish a genuine issue regarding any material fact. *Id*. at 120. Summary disposition is proper under MCR 2.116(C)(5) if "[t]he party

---

[1] Technically, the applicable rights would be "littoral" rather than "riparian," but the two terms are today functionally synonyms. See *2000 Baum Family Trust v Babel*, 488 Mich 136, 138 n 1; 793 NW2d 633 (2010).

asserting the claim lacks the legal capacity to sue." Capacity to sue requires the party to have "a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large or if the statutory scheme implies that the Legislature intended to confer standing on the litigant." *Lansing Schs Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 372; 792 NW2d 686 (2010).

As noted, Crooked Creek Road appears to have existed in its present location since at least 1872, and certainly it was regarded as sufficiently well-established to serve as a known boundary line when the various properties were conveyed by their last common owner. We cannot find any public document, and we have been provided with no evidence, suggesting that there was ever a formal dedication of the road. Since 1838, a statute substantially identical to MCL 221.20 has provided that a road that has been used as a road for some requisite period—one that had clearly been exceeded at any time relevant to this matter—would be legally deemed a public highway. *Village of Grandville v Jenison*, 84 Mich 54, 67-68; 47 NW 600 (1890); *City of Kentwood v Est of Sommerdyke*, 458 Mich 642, 649-650; 581 NW2d 670 (1998). This creates an implied dedication. *Id*. at 653-655. Such a dedication is considered one at common law, and therefore does not pass fee ownership to the land underneath the road. *2000 Baum Family Trust v Babel*, 488 Mich 136, 147-149 1; 793 NW2d 633 (2010). However, no matter what legal vehicle was used to create a road, abutting landowners have special, and highly protected, rights. *Id*. at 152-158.

Riparian rights are distinct and "special [property] rights to make use of water in a waterway adjoining the owner's property," including placing and maintaining a dock. *Holton v Ward*, 303 Mich App 718, 725-726; 847 NW2d 1 (2014) (quotation marks and citation omitted). The land ordinarily must actually touch the water. *Id*. at 726; *Hilt v Weber*, 252 Mich 198, 218; 233 NW 159 (1930). However, if the *only* land separating property from the water's edge is a roadway, then "in the absence of an intention of the parties [to any relevant conveyance] appearing to the contrary," the land across the road from the water enjoys "the same riparian rights on the opposite side of the highway as it would had the lot itself been contiguous to the shore line." *Croucher v Wooster*, 271 Mich 337, 342-344; 260 NW 739 (1935). In *Croucher*, the highway had been established by user, *id*. at 339, but the same rule applies to any public highway, no matter how it came into existence. *2000 Baum Family Trust*, 488 Mich at 167-171.

The significance is of course obvious: because Crooked Creek Road existed at the time of the original splitting off of the land that became Dogwood Shores, that land immediately held riparian rights in the now-disputed dock area, because the stretch of shore was separated from the Dogwood Shores property by *only* a road. Nothing in the deed suggests a contrary intention. The omission of both the road and the "outlet parcel" from the original Dogwood Shores plat, and the original developer's subsequent quitclaim conveyance of "[t]he public road as delineated on the plat of Dogwood Shores," is an interesting twist, but ultimately an immaterial one. The omission of the road might mean that any abutting landowners would lack the traditional "reversionary interest to the center of the street," *2000 Baum Family Trust*, 488 Mich at 155-157, but would lack none of the other rights traditionally enjoyed by abutting landowners. Considering the prior establishment of the road, we are doubtful that the developer retained any meaningful rights in the road to quitclaim away, and the quitclaim was for *only* the road. In any event, the nature of "fee ownership" in a road is, notwithstanding what one might expect from the usual understanding of the term "fee ownership," an exceptionally limited one. *Id*. at 158-

-3-

166. The "outlet parcel" would, there having been no indication in any document to the contrary, have retained its riparian rights across the road, and, as discussed, it is now established that the Kahles own that parcel.

We note that the discussion in *2000 Baum Family Trust* concerned the nature of fee ownership conveyed by statute, not by an ordinary deed. However, we find the Court's discussion as a whole instructive and strongly suggestive that public "ownership" of public highways is intrinsically of a highly restrictive nature, and the rights enjoyed under such "ownership" equally so. We do not purport to decide what, if any, meaningful distinction there might be between the various manners of conveying road "ownership," but only that conveying *just the road* does not divest abutting properties, even whether or not then owned by the conveyor, of any rights other, *perhaps*, than to the traditional reversionary interest in the land under the road in the hypothetical event that the road is abandoned. Divesting property located across a road from the water's edge of its riparian rights requires an expressed or necessarily implied, but in any event affirmative intention to do so. No such intention was apparent here.

We therefore reverse that portion of the trial court's order finding that the Kahles lacked riparian rights to the area at issue. We find that the Kahles do have riparian rights to that area. We affirm the trial court's finding that the Gutweins do not have riparian rights to that area, because they do not own any non-roadway land there, and at the time of the conveyance of the Hunt's Shores land, the riparian rights to that area had already been conveyed to the Dogwood Shores land. Consequently, the Gutweins' trespass and private nuisance claims fail because the Kahles' exercise of their riparian rights does not, at least on the facts alleged, invade any right to possession or enjoyment held by the Gutweins. See *Adkins v Thomas Solvent Co*, 440 Mich 293, 302; 487 NW2d 715 (1992); *Terlecki v Stewart*, 278 Mich App 644, 654; 754 NW2d 899 (2008).

"A public nuisance is an unreasonable interference with a common right enjoyed by the general public." *Cloverleaf Car Co v Phillips Petroleum Co*, 213 Mich App 186, 190; 540 NW2d 297 (1995). "A nuisance per se is an act, occupation, or structure which is a nuisance at all times and under any circumstances." *Martin v State of Michigan*, 129 Mich App 100, 108; 341 NW2d 239 (1983). A structure constructed in violation of a zoning ordinance is a nuisance per se. MCL 125.3407. Either non-private nuisance requires a plaintiff to demonstrate special damages in the form of some kind of harm different and distinct from whatever harm is suffered by the public generally. *Adkins* 440 Mich at 306 n 11; *Towne v Harr*, 185 Mich App 231, 232-233; 460 NW2d 596 (1990). Presuming the Gutweins correctly state that the Kahles' dock and stairway thereto are indeed in violation of local ordinances, the only special damages the Gutweins assert are intrusions into riparian rights that we have established they do not possess and into their fee ownership that we have established is at most a reversionary interest. The Gutweins' non-private nuisance claims are therefore not maintainable.

The trial court's order is reversed to the extent it held that the Kahles lack riparian rights to the disputed property. In all other respects, we affirm. The matter is remanded to the trial

court for entry of an order to that effect and any further proceedings consistent with this opinion that the trial court may deem necessary or appropriate.  We do not retain jurisdiction.

/s/ William B. Murphy
/s/ Patrick M. Meter
/s/ Amy Ronayne Krause